The **ENSIGN–BICKFORD COMPANY, Plaintiff,**

v.

**ICI EXPLOSIVES USA INC. and ICI Explosives Canada Inc., a division of ICI Canada Inc., Defendant.**

**Case No. 2:92–CV–607 (JAC).**

United States District Court, D. Connecticut.

March 31, 1993.

---

James A. Wade and Frank F. Coulom, Jr. (Robinson & Cole), Hartford, CT, for plaintiff.

William R. Murphy (Tyler, Cooper & Alcorn), New Haven, CT, Garland P. Andrews, David L. Hitchcock and Bruce W. Slayden (Richards, Medlock & Andrews), Dallas, TX, for defendant.

## RULING ON MOTION TO DISMISS

JOSÉ A. CABRANES, Chief Judge:

The plaintiff, The Ensign–Bickford Company ("Ensign–Bickford") brings this action for patent infringement against ICI Explosives USA, Inc. ("ICI USA") and ICI Explosives Canada, Inc. ("ICI Canada" or "the defendant"). Pending before the court is ICI Canada's Motion to Dismiss (filed July 23, 1992). The principal issues raised in this motion are (1) whether this court has subject-matter jurisdiction over the claims against ICI Canada and (2) whether this court has in personam jurisdiction over ICI Canada.

The complaint, which was filed on July 14, 1992, alleges that Ensign–Bickford holds United States Letters Patent 3,987,732 (the " '732 patent") for an explosive initiation device marketed under the trade name of E–Z Det; that ICI Canada produces a similar product under the trade name of Handidet; and that ICI USA purchases the Handidet

product from ICI Canada and sells it in the United States. On the basis of these allegations, the complaint asserts a patent infringement claim and two related claims against ICI Canada. Count One alleges that by "making, using, and selling" the Handidet device ICI Canada is directly infringing the '732 patent in violation of 35 U.S.C. § 271.[1] Count Two alleges that by manufacturing and selling that device ICI Canada is breaching a January 4, 1990 agreement with Ensign–Bickford. Count Three alleges that by infringing the '732 patent and breaching the January 4, 1990 agreement ICI Canada is carrying out unfair trade practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn.Gen.Stat. § 42–110b *et seq.* The complaint asserts the same three claims against ICI USA, which is not a party to the present motion.

Defendant ICI Canada filed this motion to dismiss on July 23, 1992, and the plaintiff filed a memorandum in opposition on November 20, 1992.[2] The court heard oral argument on this motion on November 30, 1992. The parties have been permitted to conduct extensive discovery on jurisdiction-related matters both before and after the hearing. In addition, the parties have also been afforded the opportunity to submit numerous supplemental memoranda as discovery in this matter has progressed.[3] The motion became ripe for decision on February 1, 1993.

## DISCUSSION

ICI Canada's motion to dismiss raises two principal issues: (1) whether Ensign–Bick-

ford's sole federal claim, which is a patent infringement claim, is sufficient to confer subject-matter jurisdiction on this court, and (2) whether the exercise of personal jurisdiction over ICI Canada in this case is authorized by the Connecticut long-arm statute and is consistent with the Due Process Clause of the Fourteenth Amendment. In addition, ICI Canada seeks dismissal of the plaintiff's pendent state law claims.

### I

At the threshold, it is necessary to consider ICI Canada's motion to dismiss the plaintiff's claims for lack of subject-matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). ICI Canada challenges the court's subject-matter jurisdiction on two grounds. First, the defendant attacks the patent-infringement claim on its face, arguing that the claim does not establish federal jurisdiction because it does not allege that ICI Canada used, made or sold the Handidet device "within the United States" as required by 35 U.S.C. § 271(a).[4] Second, ICI Canada attacks the truth of the jurisdictional allegations on which the patent-infringement claim is based: the defendant argues that the court should find, based on facts in the record, that ICI Canada never used, sold, or made the Handidet device within the United States.[5] In response, the plaintiff (1) acknowledges that a patent-infringement claim must allege that the violation occurred in the United States, but asserts that the complaint sufficiently makes this allegation, and (2) presents evidence to show that ICI Canada did use and sell the Handidet device in the Unit-

---

**1.** 35 U.S.C. § 271(a) provides in pertinent part that:

> [e]xcept as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

**2.** *See* Memorandum in Support of Motion of ICI Explosives Canada to Dismiss (filed July 23, 1992) ("Defendant's July 23 Memorandum"); Memorandum of the Ensign–Bickford Company *in Opposition to Defendant's Motion to Dismiss* (filed November 20, 1992) ("Plaintiff's November 20 Memorandum").

**3.** *See* Reply of ICI Explosives Canada to Plaintiff's Response to Motion to Dismiss (filed No-

vember 25, 1992) ("Defendant's November 25 Memorandum"); The Ensign–Bickford Company's Supplemental Memorandum in Opposition to Defendant's Motion to Dismiss (filed November 30, 1992) ("Plaintiff's November 30 Memorandum"); Plaintiff's Supplemental Memorandum in Opposition to Motion to Dismiss (filed January 19, 1993) ("Plaintiff's January 19 Memorandum"); and Defendant ICI Canada's Supplemental Memorandum in Support of its Motion to Dismiss (filed February 1, 1993) ("Defendant's February 19 Memorandum").

**4.** *See* Defendant's July 23 Memorandum at 23–25.

**5.** *See id.* at 25–27.

ed States.[6] Each of the defendant's challenges to the court's subject-matter jurisdiction will be addressed in turn.

██ Before turning to the merits of the Rule 12(b)(1) motion, it should be emphasized that the defendant has made two distinct challenges to the court's subject-matter jurisdiction: a *facial* challenge addressed solely to the pleadings, and a *factual* challenge addressed to the sufficiency of the evidence underlying the jurisdictional elements of the pleadings.[7] With respect to the facial challenge, the court may consider only the materials in the complaint itself. With respect to the factual challenge, however, the court may also consider affidavits, deposition testimony, and other materials outside the complaint. *See Antares Aircraft, L.P. v. Federal Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991), *vacated on other grounds,* — U.S. —, 112 S.Ct. 3020, 120 L.Ed.2d 892 (1992). The consideration of materials outside the complaint on a motion to dismiss pursuant to Rule 12(b)(1) does *not* convert the motion to one for summary judgment pursuant to Rule 56. *See* Moore's Federal Practice ¶ 12.-07[2.—1] (1985).

### A

██ The first issue to be considered is whether the patent-infringement claim alleged in Count One is sufficient on its face to establish subject-matter jurisdiction. Count One alleges that

> [d]efendants are willfully and intentionally infringing Letters Patent '732 by making, selling, and using a product marketed under the name "Handidet" and described by defendants as a "Nonelectric, Surface De-

lay and In-hole Detonator Assembly," with full knowledge of the existence of Letters Patent '732.

Complaint, ¶ 11. It is true, as the defendants point out, that this claim does not specifically allege that the defendants infringed the '732 patent "within the United States." Even so, the plaintiff's patent-infringement allegation is sufficient to establish subject-matter jurisdiction. It is well-established that a court should not dismiss a federal claim for lack of subject-matter jurisdiction based on the pleadings unless the claim "clearly appears to be immaterial and made solely for the purpose of obtaining jurisdiction" or the claim "is wholly insubstantial and frivolous." *Spencer v. Casavilla,* 903 F.2d 171, 173 (2d Cir.1990) (quoting *Bell v. Hood,* 327 U.S. 678, 682–83, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). Under this rule, the court should not dismiss a claim for lack of subject-matter jurisdiction even if the court would have dismissed the complaint in response to a motion under Fed.R.Civ.P. 12(b)(6) for failure to state a claim on which relief can be granted. *See Spencer,* 903 F.2d at 173. In sum, the federal court has subject-matter jurisdiction if the complaint "plainly seeks recovery under the federal Constitution [or] laws and asserts claims that are neither immaterial nor frivolous." *Id.* at 173–74.

In the present case, the complaint meets this standard. There is no doubt that the plaintiff seeks relief under federal law; it is clear that the patent-infringement claim is not immaterial to the complaint, since it is based directly on the plaintiff's alleged injury; and, notwithstanding the defendant's objection, it is also clear that the claim is not frivolous on its face. In light of the fact that

---

**6.** *See* Plaintiff's November 20 Memorandum at 15–19.

**7.** The distinction between "facial" and "factual" challenges to the court's subject-matter jurisdiction has been usefully described by the Court of Appeals for the Third Circuit. The Court stated that

> [t]he facial attack does offer similar safeguards [to a Rule 12(b)(6) motion] to the plaintiff: the court must consider the allegations of the complaint as true. The factual attack, however, differs greatly for here the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual

12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

*Mortensen v. First Federal Savings & Loan Association,* 549 F.2d 884, 891 (3d Cir.1977).

the complaint meets the standard articulated in *Spencer,* the complaint is sufficient to survive a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. The fact that the complaint might not be sufficient to survive a Rule 12(b)(6) motion to dismiss for failure to state a claim is simply irrelevant here, since the defendant has made no such motion. *See Spencer,* 903 F.2d at 173 (dismissal should be on the merits, not for lack of jurisdiction, where court concludes that allegations in the complaint are insufficient). Accordingly, the court concludes that the patent-infringement claim alleged in Count One is sufficient on its face to establish subject-matter jurisdiction.

### B

██ The second issue to be addressed is whether the plaintiff's patent-infringement claim is factually sufficient to establish subject-matter jurisdiction. The defendants have challenged the court's subject-matter jurisdiction by arguing that facts in the record establish that ICI Canada never sold or used the Handidet within the United States.[8] In response, the plaintiff contends that there is a "genuinely disputed question of fact" as to whether ICI Canada used or sold the Handidet device in this country.[9] The plaintiff also argues, in the alternative, that there is a genuine factual dispute as to whether ICI Canada "induced" ICI USA to infringe the plaintiff's patent.[10]

██ The court may dismiss a facially sufficient complaint for lack of subject-matter jurisdiction if the court finds, based on affidavits or other evidence outside the complaint, that the asserted basis for federal jurisdiction is not sufficient. *See KVOS, Inc. v. Associated Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 201, 81 L.Ed. 183 (1936) (presentation of "facts dehors the complaint" was "an appropriate method of challenging the jurisdictional allegations of the complaint"); *Antares Aircraft,* 948 F.2d at 96 (court "may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits"). Where the defendant has challenged the factual allegations underlying the plaintiff's claim to federal jurisdiction, the plaintiff bears the burden of presenting evidence to show that federal jurisdiction does in fact exist. *See Antares Aircraft,* 948 F.2d at 96–97 (affirming dismissal for lack of subject-matter jurisdiction where plaintiff presented no evidence to contradict defendant's affidavit showing there was no basis for federal jurisdiction); *see also Mortensen v. First Federal Savings & Loan Association,* 549 F.2d 884, 891 (3d Cir.1977) (suggesting that no presumption of truthfulness attaches to the plaintiff's allegations when defendant makes factual attack on subject-matter jurisdiction). It should be noted, however, that the plaintiff is not required to meet the same standard of proof that would be applied at trial. *See Mortensen,* 549 F.2d at 892 (holding that trial judge should demand less in the way of jurisdictional proof on a Rule 12(b)(1) motion than would be required at trial).

The factual issue in dispute here is whether ICI Canada "used" or "sold" the Handidet device in the United States; both parties agree that ICI Canada did not "make" the device in this country. The plaintiff contends that ICI Canada "used" the device in the United States because persons employed or controlled by ICI Canada participated in both the planning and the execution of Handidet tests that were conducted in Pennsylvania and Kentucky.[11] In addition, the plaintiff contends that ICI Canada "sold" the device in the United States because the defendant

---

8. *See* Defendant's July 23 Memorandum at 25–27.

9. *See* Plaintiff's November 20 Memorandum at 19.

10. *See id.* at 19–21. The defendant asserts that the plaintiff has not properly alleged an inducement claim. *See* Defendant's November 25 Memorandum at 11–13. This issue is moot, however, because the court finds that the plaintiff has sufficiently alleged that ICI Canada itself

sold or used the Handidet device in the United States. This finding makes it unnecessary to determine whether the plaintiff properly alleged that ICI Canada "induced" ICI USA to infringe the '732 patent or whether the inducement allegation is sufficient to confer subject-matter jurisdiction on the court.

11. *See* Plaintiff's November 20 Memorandum at 18.

executed the sales to ICI USA through a computer network located in the United States and received payment from ICI USA through a bank in Pittsburgh, Pennsylvania. In response, ICI Canada asserts (1) that its involvement in the Handidet tests does not constitute "use" of the device and (2) that the "sale" of the device took place in Canada because the contract of sale provided for delivery "F.O.B." in Canada. Based on the full record of this case, the court finds that the plaintiff has presented facts sufficient to establish the existence of federal jurisdiction.

### (1)

■ First, the plaintiff has presented substantial evidence to show that ICI Canada's involvement in the testing of the Handidet device in the United States amounted to the "use" of that device by ICI Canada in the United States. The evidence presented by the plaintiff indicates that one ICI USA employee, Drew Stirling, was also an employee of ICI Canada at the time of the tests in Pennsylvania and Kentucky; the evidence also indicates that Stirling took direction from ICI Canada *throughout* the period of his "temporary transfer" to ICI USA, and that Stirling helped to arrange the tests of the Handidet device in the United States while working (at least nominally) for ICI USA.[12] Furthermore, the evidence presented by the plaintiff suggests that other employees of ICI Canada worked closely with their counterparts at ICI USA during the period in which the Handidet tests were conducted.[13] While it is true that the participation of ICI Canada employees in the affairs of ICI USA may not be sufficient by itself to justify disregarding ICI Canada's corporate identity, it is sufficient to support the inference that ICI Canada was a participant—albeit an indirect one—in the American tests of the Handidet device.

### (2)

■ Second, the plaintiff has also presented substantial evidence to show that ICI Canada was involved in the "sale" of the Handidet device in the United States. The defendant vigorously asserts that it could not have sold the device in the United States because title to the Handidets always passed in Canada, at the point where ICI Canada delivered the Handidets to a common carrier who then transported them to ICI USA in Frankfort, Kentucky.[14] Even if this is true, it is not dispositive of the issue of whether ICI Canada "sold" the Handidet device "within the United States." The facts in the record make it clear that employees of ICI Canada participated on a regular basis in meetings in the United States at which employees of ICI USA discussed and planned the marketing of Handidets; indeed, the facts indicate that these meetings produced plans for joint "North American Strategies" and a "North American price structure."[15] Moreover, the plaintiff has shown that ICI Canada received payment for Handidets in Pittsburgh, Pennsylvania.[16] These facts are sufficient to establish that employees of ICI Canada played an active, long-running role in the development and implementation of the efforts of ICI USA to sell Handidets in the

---

**12.** *See* Plaintiff's January 19 Memorandum at 5–6 (citing Exs. 25, 29 and 38). The defendant has vigorously asserted that Stirling was solely an employee of ICI USA during the time he worked in the United States, while the plaintiff has argued that Stirling was in fact an employee of ICI Canada during that period. The court finds the plaintiff's view persuasive, based on the following language in the letter that described the terms of Stirling's transfer:

While on temporary transfer you [Stirling] will continue to be an employee of ICIC [ICI Canada Inc.] and subject to the terms of your Employment Agreement with ICIC dated May 1, 1985 except to the extent that such terms are modified by the terms of your temporary transfer which are set out in this letter. Notwithstanding any provision contained herein, the provisions of your Employment Agreement with ICIC regarding the termination of your employment will remain in full force and operation throughout the period of your temporary transfer.

Ex. 38, Plaintiff's January 19 Memorandum.

**13.** *See* Plaintiff's January 19 Memorandum at 3–5.

**14.** *See* Defendant's November 25 Memorandum at 7–8.

**15.** *See* Plaintiff's January 19 Memorandum at 4–5 (citing Ex. 12); Plaintiff's November 20 Memorandum at 7–8 (citing Exs. 7–12).

**16.** *See* Plaintiff's November 20 Memorandum at 18–19 (citing Ex. 31).

United States. These facts are also sufficient to establish that ICI Canada engaged in activities in the United States in connection with the sale of Handidets. Consequently, the fact that ICI Canada formally transferred title to the Handidets on Canadian territory is not sufficient to preclude a finding that ICI Canada sold the Handidet device in the United States.

For the foregoing reasons, the court finds that the plaintiff has presented sufficient evidence to support the conclusion that ICI Canada "used" or "sold" the Handidet device in the United States. In light of this finding, the court concludes that the plaintiff has succeeded in demonstrating that the court has subject-matter jurisdiction over the claims against ICI Canada. The defendant's motion to dismiss pursuant to Rule 12(b)(1) must therefore be denied.

## II

The defendant challenges the court's personal jurisdiction on two grounds. First, ICI Canada has moved to dismiss the claims against it pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction. Second, ICI Canada has moved to dismiss the claims against it pursuant to Fed.R.Civ.P. 12(b)(5) for defective service of process. The court shall address these claims in turn.

## A

■■■■ On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing with "actual proof" that the court has personal jurisdiction over the defendant. *See United States v. Montreal Trust Co.*, 358 F.2d 239, 242 (2d Cir.), *cert. denied,* 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966) (burden of proof is on plaintiff); *Hover v. Asbestos Corp.*, 678 F.Supp. 370, 373 (D.Conn.1986) (plaintiff must present "actual proof"); *see also Bowman v. Grolsche Bierbrouwerij B.V.*, 474 F.Supp. 725, 728 (D.Conn.1979). To survive the motion, the plaintiff must make a "prima facie showing" through affidavits or other evidence that the defendant's conduct was sufficient for the court to exercise personal jurisdiction. *See Hover,* 678 F.Supp. at 373. A defendant's conduct is sufficient for the exercise of personal jurisdiction if (1) the conduct satisfies the requirements of the long-arm statute of the forum state and (2) the conduct satisfies the "minimum contacts" requirement of the Due Process Clause of the Fourteenth Amendment.

## (1)

■■■ The first issue to be considered is whether ICI Canada's conduct within Connecticut is sufficient to meet the requirements for personal jurisdiction under the Connecticut long-arm statute, Conn.Gen.Stat. § 33–411.[17] The long-arm statute recognizes four possible grounds of personal jurisdiction, each of which the defendant argues is inapplicable here.[18] In response, the plaintiff relies primarily on subsection (c) of the long-arm statute, which provides for jurisdiction over a defendant where (1) the cause of action arises out of the production, manufacture, or distribution of goods, (2) the goods are used or consumed in Connecticut, and (3) the defendant had a "reasonable expectation" that the goods would be used or consumed in

---

**17.** Conn.Gen.Stat. § 33–411(c) provides in pertinent part that

[e]very foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; or (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers re-

lating thereto were accepted within or without the state; or (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

**18.** *See* Defendant's July 23 Memorandum at 4–12.

Connecticut.[19] The plaintiff also argues, in the alternative, that personal jurisdiction over the defendant can be based on subsection (d) of the long-arm statute, which provides for personal jurisdiction on the basis of tortious conduct within the state.[20]

The principal dispute between the parties with respect to subsection (c) of the Connecticut long-arm statute is whether ICI Canada had a "reasonable expectation" that the Handidet device would be used or consumed in Connecticut. ICI Canada asserts that after selling Handidets to ICI USA in Canada it had "no control whatsoever" over the purchaser's resale or use of the devices; ICI Canada further asserts that there was at most a "mere likelihood" that Handidets would be used or consumed in the state of Connecticut.[21] The plaintiff rejects this description of ICI Canada's understanding about the sale of Handidets, arguing that "ICI Canada not only had an expectation that Handidets would be sold in Connecticut (and in every other state in the union), it had a conscious desire and plan to ensure that Handidets would in fact be sold here."[22]

The record in this case supports the plaintiff's position. It may be true, of course, that employees of ICI Canada remained ignorant of the actual names and locations of the explosives distributors who purchased Handidets from ICI USA.[23] It may also be true that the distributors who purchase Handidets from ICI USA never contacted employees of ICI Canada to resolve issues relating to deliveries, product complaints, or warranty claims.[24] Even if true, these factual allegations—and others made by the defendant in support of its motion—must be viewed in the context of the full record. The plaintiff has presented evidence to show that an employee of ICI Canada, Clem Bennett, participated in a team assembled in December 1990 to "identify, develop, and introduce an E–Z Det type product into the U.S. market";[25] that one purpose of that team was to determine the validity of the plaintiff's patent on the E–Z Det device (i.e., the '732 patent);[26] that an employee of ICI Canada, Ken Williamson, led the development of a "detailed market plan" for introduction of Handidets into the U.S. market;[27] and that Williamson and other ICI employees attended a convention in the United States at which Williamson met "quite a few" distributors of products sold by ICI USA.[28] The plaintiff has also presented evidence to show that ICI USA holds an exclusive license from ICI Canada for the sale of Handidets in the United States;[29] that ICI USA has an established network of distributors in the United States, consisting of 40 distributors in 26 states, including Vet's Explosives in Connecticut;[30] that an employee of ICI Canada, James Simon, saw a list of ICI USA's network of distributors in February 1992;[31] and that an employee of ICI Canada, Kenneth Williamson, discussed Vet's Explosives—the Connecticut distributor for ICI USA—with an employee of ICI USA in the context of "whether 'we were selling product in Connecticut.'"[32] Finally, ICI Canada has acknowledged that it sold approximately 100,000 units of the Handidet

---

**19.** See Plaintiff's November 20 Memorandum at 22–29.

**20.** See id. at 30.

**21.** See Defendant's July 23 Memorandum at 9; see also Defendant's February 1 Memorandum at 5–6.

**22.** See Plaintiff's November 20 Memorandum at 24.

**23.** See Defendant's November 25 Memorandum at 7–8.

**24.** See id. at 4–5.

**25.** See Plaintiff's November 20 Memorandum at 7 (citing Ex. 7).

**26.** See id.

**27.** See id. at 8 (citing Ex. 12).

**28.** See id. at 9 (citing Dep. of Kenneth Williamson at 34–35).

**29.** See id. at 11 (citing Ex. 13, ¶ 8).

**30.** See id. at 13 (citing Ex. 35).

**31.** See id. at 13 (citing Dep. of James Simon at 102–03).

**32.** See id. at 14 (citing Dep. of Kenneth Williamson at 96) (emphasis in original).

device to ICI USA for distribution in the United States.[33]

The foregoing facts make it clear that ICI Canada had a "reasonable expectation" that the Handidets which it sold to ICI USA would eventually arrive in Connecticut. This conclusion does not rest on the assumption that employees of ICI Canada knew specifically that ICI USA distributed Handidets through Vet's Explosives in Connecticut— although the plaintiff has produced evidence suggesting that this may be the case. Instead, this conclusion rests on the reasonable inference that the sale of a large number of devices to a firm with a nationwide distribution network will generally result in the sale—or at least the use—of one of those devices in the state of Connecticut. This inference is reasonable, in the particular circumstances presented here because (1) the record indicates that explosive devices like Handidets are used throughout the United States—that is, their use is not confined to particular states or regions—so it is fair to assume that a nationwide distribution network would result in distribution within Connecticut; and (2) the record indicates that Handidets can be easily transported, so it is fair to assume that even if ICI USA does not have a distributor in Connecticut the devices might nevertheless find their way into this state. For these reasons, the court concludes that ICI Canada should have had a "reasonable expectation" that Handidets would be used in Connecticut.

■■■ Finally, the defendant argues that the "reasonable expectation" prong of the Connecticut long-arm statute is unavailable here because it applies only to product-liability actions, not to actions for patent infringement.[34] In support of this position, the defendant relies on the decision of our Court of Appeals in *Buckley v. New York Post Corp.*, 373 F.2d 175, 177–78 (2d Cir.1967) (suggesting, in dicta and without supporting authori-

ty, that the "main thrust" of Conn.Gen.Stat. § 33–411(c)(3) was to define the personal jurisdiction of Connecticut courts in product liability cases). As the plaintiff notes, the suggestion in *Buckley* has not been followed by any Connecticut court or by any federal court applying Connecticut law in the quarter-century since that case was decided.[35] More importantly, the plain language of the "reasonable expectation" element of the Connecticut long-arm statute provides for its application in "any cause of action." Conn.Gen. Stat. § 33–411(c)(3). Accordingly, the court concludes that the "reasonable expectation" element of the Connecticut long-arm statute can provide a basis for personal jurisdiction in a patent-infringement case.

In sum, the defendant's knowledge of the nature and extent of the Handidet sales in the United States should have given the defendant a "reasonable expectation" that Handidets would be sold or used in Connecticut. Moreover, the "reasonable expectation" prong of the Connecticut long-arm statute applies to all causes of action, including actions for patent infringement. Accordingly, the court concludes that the exercise of personal jurisdiction over the defendant ICI Canada is proper under the Connecticut long-arm statute.

(2)

The next issue to be considered is whether the exercise of personal jurisdiction over ICI Canada would be consistent with the defendant's rights under the Due Process Clause of the Fourteenth Amendment. The defendant contends that the exercise of personal jurisdiction over it in this case would violate due process because the defendant does not have "minimum contacts" with the state of Connecticut and because an action against the defendant in this forum would violate "traditional notions of fair play and substantial justice."[36] The court shall address these contentions in turn.

**33.** *See* Defendant's November 25 Memorandum at 29 (citing Transcript of Hearing of July 24, 1992, at 137).

**34.** *See* Defendant's November 25 Memorandum at 23–24.

**35.** *See* Plaintiff's November 20 Memorandum at 28.

**36.** *See* Defendant's July 23 Memorandum at 13 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

(a)

■ The principal dispute between the parties with respect to the minimum-contacts standard concerns the degree of "purposeful availment" that this standard requires. In a leading case, the Supreme Court stated that the minimum-contacts standard requires "that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). The Court elaborated on the purposeful-availment requirement in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), a case in which the only connection between the corporation and the forum state was the result of a decision by a consumer to transport the corporation's product to the forum state. Recognizing the tenuousness of a connection based on acts of the consumer rather than acts of the corporation itself, the Court held that "the mere likelihood that a product will find its way into the forum State" is not enough to establish personal jurisdiction. *Id.* at 297, 100 S.Ct. at 567. The Court noted, however, that the exercise of personal jurisdiction over a foreign corporation *is* proper if the corporation "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 298, 100 S.Ct. at 567.

Since *World–Wide Volkswagen*, the Court has continued to hold that a defendant has "minimum contacts" with the forum state only if the defendant has purposefully availed itself of the advantages of conducting activities in the forum state. *See, e.g., Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774, 104 S.Ct. 1473, 1478, 79 L.Ed.2d 790 (1984). In a more recent ruling, however, the status of the purposeful-availment requirement became blurred by a sharp disagreement among the justices on the question of *how much* purposefulness must be shown to support a finding of personal jurisdiction over a foreign corporation. *See Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987). In *Asahi*, a four-justice plurality articulated a standard that appeared to require a higher degree of purposefulness than the Court had demanded in earlier cases. Justice O'Connor, writing for the plurality, stated that

> The "substantial connection" between the defendant and the forum State necessary for a finding of minimum contacts must come about by *an action of the defendant purposefully directed toward the forum State.* The placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State.... [A] defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State.

*Id.* at 112, 107 S.Ct. at 1032 (citations omitted) (emphasis in original). Under this view, a plaintiff would be required to show that the defendant engaged in some "additional conduct" directed toward the forum state—such as designing the product specifically for that state's consumers—in order to establish personal jurisdiction. *See id.* (listing four examples of such "additional conduct"). In a concurring opinion, four justices argued that the plurality's restatement of the purposeful-availment requirement was inconsistent with the Court's holding in *World–Wide Volkswagen.*[37] Writing for the concurring justices, Justice Brennan stated:

> The stream of commerce refers not to unpredictable currents or eddies, but to the regular and anticipated flow of products from manufacture to distribution to retail sale. As long as a participant in this process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise.... Accordingly, most courts and commentators have found that jurisdiction premised on the placement of a

**37.** Justice Stevens filed a separate concurring opinion, and did not join in either Justice O'Con-nor's plurality opinion or Justice Brennan's concurring opinion.

product into the stream of commerce is consistent with the Due Process Clause, and have not required a showing of additional conduct.

*Asahi,* 480 U.S. at 117, 107 S.Ct. at 1034–35. In sum, *Asahi* raises but does not resolve the question of whether the plaintiff must show some additional conduct—beyond the defendant's knowledge or expectation that his product will enter the forum state—in order to establish personal jurisdiction.

Despite the uncertainty regarding the purposeful-availment requirement, it is clear that the court's exercise of personal jurisdiction over ICI Canada is consistent with the Due Process Clause of the Fourteenth Amendment. As an initial matter, the record in this case—which was described above in the discussion of the Connecticut long-arm statute—establishes that ICI Canada knew or should have known that Handidets would be sold or used in Connecticut.[38] Consequently, these is little doubt that the plaintiff has satisfied the test articulated by the Court in *World–Wide Volkswagen* and by Justice Brennan in *Asahi:* the plaintiff has shown that ICI Canada was "aware that the final product [was] being marketed in the forum State." *Asahi,* 480 U.S. at 117, 107 S.Ct. at 1034. Furthermore, the record in this case also supports the conclusion that the court would have personal jurisdiction over ICI Canada even under the stricter purposeful-availment requirement espoused by Justice O'Connor. Justice O'Connor's opinion provides that "the placement of a product into the stream of commerce, *without more,* is not an act of the defendant purposefully directed toward the forum State." *Asahi,* 480 U.S. at 112, 107 S.Ct. at 1032 (emphasis supplied). The plaintiff has, in fact, shown much more in this case than that the defendants placed the Handidets in the stream of commerce: as noted earlier, and as the plaintiff has shown, ICI Canada closely cooperated with ICI USA for a period of several years to ensure the successful entry of Handidets into the United States market. Indeed, it is arguable—perhaps likely—that ICI Canada intentionally organized its own internal structure and policies in a way that was calculated to ensure

that ICI Canada would remain beyond the reach of the United States courts. This type of conduct is clearly inconsistent with the underlying policies of both the *Asahi* plurality and of the Court's holdings in earlier cases: as the Court noted in *Burger King Corp.,* "the Due Process Clause may not readily be wielded as a territorial shield to avoid interstate obligations that have been voluntarily assumed." *Burger King Corp.,* 471 U.S. at 474, 105 S.Ct. at 2183.

In sum, the plaintiff has presented facts sufficient to show that ICI Canada purposefully directed its activities toward the state of Connecticut and, as a result, established "minimum contacts" with this state.

(b)

The existence of "minimum contacts" does not resolve the issue of whether the court may exercise personal jurisdiction over an out-of-state defendant. Once it has been decided that a defendant purposefully established minimum contacts with a forum state, the court must consider these contacts in light of other factors to determine whether the assertion of personal jurisdiction would comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The Supreme Court has articulated several criteria to be applied in determining whether the *International Shoe* standard has been satisfied, stating that

> courts in appropriate cases may evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King Corp.,* 471 U.S. at 476–77, 105 S.Ct. at 2184 (citations and internal quotations omitted). In establishing this multifactor test for fairness, the Court noted that a defendant who has purposefully directed

**38.** *See* notes 22 to 32 and accompanying text, *supra.*

his activities toward the forum state must "present a compelling case" to show that personal jurisdiction is lacking. *See Burger King Corp.*, 471 U.S. at 477, 105 S.Ct. at 2185; *see also Asahi*, 480 U.S. at 114, 107 S.Ct. at 1033 (plurality opinion) ("When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien defendant.").

Under the standards articulated in *World–Wide Volkswagen* and *Burger King Corp.*, it is clear that the exercise of personal jurisdiction over ICI Canada is consistent with the Due Process Clause of the Fourteenth Amendment. In this case, the burden on the foreign defendant is minimal because of the relatively short distance from the defendant's principal place of business in Ontario, Canada to the site of this litigation in Connecticut—indeed, the distance from Ontario to this forum is considerably less than the distance from Ontario to the headquarters of ICI USA in Dallas, Texas. Moreover, the unfairness of forcing a foreign party to litigate in an unfamiliar legal system is alleviated here by the fact that the Canadian legal system is similar in many respects to the legal system in the United States. Finally, the interest of the forum state of Connecticut is very high, since the plaintiff is a Connecticut-based corporation with a long history in this state. In light of these factors, the court finds that it would be consistent with "traditional notions of fair play and substantial justice" to exercise personal jurisdiction over ICI Canada.

Accordingly, the defendant's motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction must be denied.

### B

■ The defendant has moved to dismiss the plaintiff's claims pursuant to Rule 12(b)(5) for defective service of process, on the same basis that the defendant sought dismissal under Rule 12(b)(2)—namely, that service of process on ICI Canada was not authorized by the Connecticut long-arm statute. For the reasons stated above, the court finds that the Connecticut long-arm statute does authorize service of process on ICI Canada in the circumstances presented here. Accordingly, the Rule 12(b)(5) motion to dismiss must be denied.

### III

The plaintiff has alleged two pendent state law claims, one for breach of contract and one for violation of CUTPA. ICI Canada argues that the court should dismiss both of the plaintiff's pendent state law claims because the plaintiff did not respond to the motion to dismiss these claims in its memorandum of November 20, 1992.[39] In addition, ICI Canada argues that the court should dismiss the breach-of-contract claim because of comity considerations, based on the fact that the contract was made in Canada and the contract provided that Canadian law should govern its interpretation. Finally, ICI Canada argues that the court should dismiss the CUTPA claim if the breach-of-contract claim is dismissed because the former claim depends on the latter.

### A

■ The court declines to dismiss the state law claims on the basis of the plaintiff's failure to discuss these claims explicitly in its initial response to the defendant's motion to dismiss. The plaintiff implicitly addressed the defendant's motion to dismiss the pendent state law claims in its memorandum of November 20, 1992, since the defendant's attack on the state law claims rested on essentially the same ground as the defendant's attack on the plaintiff's patent-infringement claim. For this reason, the court declines to find that the plaintiff admitted that the court lacked personal jurisdiction over the state law claims.

### B

■ The court grants the defendant's motion to dismiss the plaintiff's breach-of-contract claim on grounds of international comity. The doctrine of comity is based on the principle that recognition by domestic

**39.** *See* Defendant's November 25 Memorandum at 34–36.

courts of the decisions of foreign tribunals "fosters international cooperation and encourages reciprocity, thereby promoting predictability and stability through satisfaction of mutual expectations." *Spatola v. United States,* 925 F.2d 615, 618 (2d Cir.1991) (quoting *Laker Airways v. Sabena, Belgian World Airlines,* 731 F.2d 909, 937 (D.C.Cir.1984)). Under this principle, domestic courts should defer to the decisions of foreign tribunals where the enforcement of a foreign tribunal's judgment would not be prejudicial to important policies of the forum state. *See Laker Airways,* 731 F.2d at 937. This principle also requires that domestic courts take reasonable steps to prevent potential conflicts from ripening into overt confrontations with foreign tribunals. *See E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969, 974 (3d Cir.1988) (holding, in context of potential conflict between domestic courts in different jurisdictions, that "[c]omity must serve as a guide to courts of equal jurisdiction to exercise forbearance to avert conflicts"); *see also Timberlane Lumber Co. v. Bank of America,* 749 F.2d 1378, 1382–86 (9th Cir.1984) (declining to apply United States antitrust law to conduct in Honduras to avoid "potential conflict with the Honduran government's effort to foster a particular type of business climate").

The plaintiff's breach-of-contract claim in this action is based on a contract dated January 4, 1990 between the plaintiff and CXA Industries, the predecessor of ICI Canada.[40] The court concludes that principles of comity require dismissal of the plaintiff's breach-of-contract claim for the following reasons. First, this action presents the prospect of a conflict between a decision by this court and a decision by a Canadian court. The potential for conflict arises because the plaintiff has initiated an action in a Canadian court alleging a breach of the same contractual provisions that provide the basis for the breach-of-contract claim in this matter.[41] Second, the interests of Canada outweigh the interests of Connecticut in the enforcement of the terms of this contract, since the contract relates primarily to the conduct of the parties in Canada, the contract was made in Canada, and the contract itself expressly provides that it must be governed by Canadian law.[42] Third, the pursuit of these claims in separate forums would not be needlessly duplicative because the elements of the breach-of-contract and patent-infringement claims

40. *See* Complaint, ¶¶ 14–20 (alleging breach-of-contract claim). The contract between the parties, which was known as the "Technology Agreement," provided in pertinent part that

> CXA and C–I–L and their respective subsidiaries shall have a non-exclusive royalty-free license in Canada to produce and sell in Canada products which they are presently producing and selling in Canada and which fall within the teachings of patents issued in Canada to EBCo. [the Ensign–Bickford Company] or any of its subsidiaries on or before December 31, 1987 or within the teachings of any patents issued in Canada after December 31, 1987 with respect to technology which was the subject of pending patent applications filed by EBCo. or any of its subsidiaries in Canada as at December 31, 1987.

Complaint, Ex. A (Technology Agreement, at ¶ 4(a)).

41. The plaintiff filed a complaint in the Ontario Court of Justice (General Division) in the matter of *The Ensign–Bickford Company and ICI Canada Inc.*, No. 92–23648, on July 14, 1992. *See* Defendant's November 25 Memorandum, Ex. K. Paragraph 10 of the complaint alleges that

> the defendant has breached and continues to breach the Technology Agreement [the contract dated January 4, 1990] in that the defendant was not presently producing and selling any such products within the meaning of the Technology Agreement as of January 4, 1990. In consequence, the defendant had and has no license or permission of the plaintiff to manufacture or sell such products.

Defendant's November 25 Memorandum, Ex. K, at 7.

The plaintiff filed the complaint in this matter in the United States District Court for the District of Connecticut on July 14, 1992. Paragraph 19 of the complaint alleges that

> [i]n manufacturing and selling Handidets, and a predecessor product, Easidet, in Canada, defendant ICI Canada, Inc. (formerly C–I–L) breached paragraph 4(a) of said January 4, 1990 agreement in that this defendant was not "presently producing and selling" said products in Canada at the time of the execution of said agreement and therefore had and presently have [sic] no license or permission of any kind to sell said products.

Complaint, ¶ 19.

42. The contract provides in pertinent part that "[t]his Agreement shall be governed and construed in accordance with the laws of the Province of Ontario and the laws of Canada applicable thereto." Complaint, Ex. A, at ¶ 13.

are not closely intertwined. The plaintiff's breach-of-contract claim is based primarily on the allegation that the manufacture and sale of Handidets in Canada violated paragraph 4(a) of the contract, under which the predecessors of ICI Canada held a license to "produce and sell *in Canada* products which they are presently producing and selling *in Canada* and which fall within the teachings of patents issued *in Canada* to EBCo. or any of its subsidiaries."[43] In contrast, the plaintiff's patent-infringement claim is based on the allegation that the defendant violated United States patent law, which prohibits making, using, or selling any patented invention without authority *"within the United States* during the term of the patent therefor."[44] Finally, there is little, if any, prejudice to the plaintiff in being required to litigate the breach-of-contract claim in Canada because the plaintiff itself chose to initiate a breach-of-contract action in that forum; indeed, the plaintiff initiated the breach-of-contract claim in Canada on the same day that it filed the complaint in this matter.[45]

For all these reasons, the court declines to exercise jurisdiction over the breach-of-contract claim in this action. The breach-of-contract claim shall therefore be dismissed. It should be noted, however, that the dismissal of this claim does not constitute an adjudication on the merits.

### C

The court denies the motion to dismiss the plaintiff's CUTPA claim because the defendant has not shown that the plaintiff would be unable to prevail on this claim in the absence of the breach-of-contract claim.

### CONCLUSION

To summarize: the defendant ICI Canada's motion to dismiss is

(1) DENIED with respect to Count One, which alleges a claim for patent-infringement;

(2) GRANTED with respect to Count Two, which alleges a claim for breach of contract; and

(3) DENIED with respect to Count Three, which alleges a CUTPA claim.

For the foregoing reasons, the defendant ICI Canada's Motion to Dismiss (filed July 23, 1992) (doc. # 19) is hereby GRANTED in part and DENIED in part.

It is so ordered.

---

**43.** *See* Complaint, Ex. A, at ¶ 4(a) (emphasis supplied).

**44.** *See* 35 U.S.C. § 271(a) (emphasis supplied).

**45.** The plaintiff filed both actions on July 14, 1992. *See* note 41, *supra.*