**Jack T. HUPP, Plaintiff,**

v.

**SIROFLEX OF AMERICA, INC., Defendant.**

Civ. A. No. G–94–077.

United States District Court, S.D. Texas, Galveston Division.

April 15, 1994.

■

---

Nick A. Nichols, Jr., Houston, TX, for plaintiff.

Lester L. Hewitt, Pravel, Gambrell, Hewitt Kimball & Krieger, Houston, TX, for defendant.

## ORDER

KENT, District Judge.

Before the Court is the Defendant Siroflex's motion to dismiss this action for lack of personal jurisdiction and improper venue or, alternatively, for a transfer of venue to the United States District Court for the Central District of California. For the reasons stated below, the motion is DENIED in its entirety.

## FACTS

This action is for design patent infringement, trade dress infringement, and unfair competition. The following facts are uncontroverted. The Plaintiff Jack T. Hupp, a Texas resident, procured a design patent, U.S. Patent No. Des. 342,528, entitled "Plastic Mold," which enables individuals to create rustic flagstone-like walkways for landscaping their yards. Siroflex has been manufacturing similar molds in Van Nuys, California, which have been sold across the country. However, Siroflex does not sell directly to retail customers. Its sales depend upon the actions of wholesalers who sell the product to retail outlets and to retail customers. The wholesalers also take orders from retail customers that are transmitted to Siroflex in California which in turn ships the molds F.O.B. California directly to the customers. Siroflex accepts these orders in California, and as shown by their order form, payment is made directly to Siroflex.[1] Siroflex has shipped at least 150 of its molds directly to Texas customers in the past eighteen months with a gross revenue of about $1500. It has also sent two or three promotional flyers to Texas at the request of individuals in Texas.

Siroflex also sells faucet aerators and shower heads in Texas at the rate of about one shipment, containing 100 products, per month with gross revenues of between $125 and $180 per month.

## PERSONAL JURISDICTION

■ A court can exercise personal jurisdiction over a defendant if (1) the defendant's conduct satisfies the requirements of the long-arm statute of the forum state, (2) the defendant's conduct satisfies the minimum contacts requirements of the Due Process Clause, and (3) to exercise jurisdiction over the defendant would not offend traditional notions of fair play and substantial justice.

■ The Texas long-arm statute, Tex. Civ.Prac. & Rem.Code Ann. § 17.042 (Vernon 1991), allows a court to exercise personal jurisdiction over a nonresident that commits a tort in Texas. A tort is committed where the resulting injury occurs. *Union Carbide Corp. v. UGI Corp.*, 731 F.2d 1186, 1189–90 (5th Cir.1984). Patent infringement is a tort. *Kinnear–Weed Corp. v. Humble Oil & Refining Co.*, 324 F.Supp. 1371, 1381 (S.D.Tex. 1969), *aff'd*, 441 F.2d 631 (5th Cir.1971); *cert. denied*, 404 U.S. 941, 92 S.Ct. 285, 30 L.Ed.2d 255 (1971). And, its injury occurs in the state where the patentee resides if an infringing article is sold there. *Horne v. Adolph Coors Co.*, 684 F.2d 255, 260 (3d Cir.1982); *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1140–41 (7th Cir.1975); *Imagineering, Inc. v. Van Klassens, Inc.*, 797 F.Supp. 329, 331 (S.D.N.Y.1992); *Acrison, Inc. v. Control and Metering Ltd.*, 730 F.Supp. 1445, 1448 (N.D.Ill.1990). Thus, Siroflex has committed a tort in Texas within the meaning of the Texas long-arm statute.

■ The exercise of personal jurisdiction under the Texas long-arm statute extends as far as the federal constitutional requirements of due process will allow. *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990). Thus, the determination of personal jurisdiction in Texas compresses into a

---

**1.** To assist the Court's decision, the Court has relied upon *all* of the evidence submitted by the parties, including the affidavits attached to the parties' briefs on their preliminary injunction positions.

due process assessment of minimum contacts and fair play. *Aviles v. Kunkle*, 978 F.2d 201, 204 (5th Cir.1992) (per curiam). When a defendant's contacts with the forum which are the basis for jurisdiction are related to the subject matter of the controversy, a court can exercise specific personal jurisdiction over a defendant. *Id.* at 204.

Siroflex first asserts that it does not have minimum contacts with Texas because it has not "purposefully availed" itself of the advantage of conducting activities in Texas within the meaning of controlling Supreme Court decisions. The "purposeful availment" requirement originated in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958), and was elaborated on more fully in *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). In *World–Wide*, the Court stated that "the mere likelihood that a product will find its way into the forum State" is not enough to establish personal jurisdiction. *Id.* at 297, 100 S.Ct. at 567. But, personal jurisdiction is established if the defendant "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum State." *Id.* at 298, 100 S.Ct. at 567.

The Supreme Court has continued to require that a defendant corporation "purposefully avail" itself, but in a more recent ruling, the degree of purposefulness that is constitutionally necessary became blurred. *Ensign–Bickford Co. v. ICI Explosives USA Inc.*, 817 F.Supp. 1018, 1029 (D.Conn.1993). In *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987), a plurality of the Court articulated a standard that appeared to require a higher degree of purposefulness than the Court had demanded in earlier cases. *Ensign–Bickford*, 817 F.Supp. at 1029. The four-justice plurality in *Asahi* stated that a "defendant's awareness that the stream of commerce may or will sweep the product into the forum State does not convert the mere act of placing the product into the stream into an act purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112, 107 S.Ct. at 1032. The four justices concurring

would only require that a defendant be "aware that the final product is being marketed in the forum State" since "the possibility of a lawsuit there cannot come as a surprise." *Id.* at 117, 107 S.Ct. at 1035; *see Ensign–Bickford*, 817 F.Supp. at 1029–30.

Under very similar circumstances to the present case, the court in *Ensign–Bickford* concluded that the defendant's conduct met both of the purposeful availment tests enunciated in *Asahi*. *See Ensign–Bickford*, 817 F.Supp. at 1030. As in *Ensign–Bickford*, Siroflex was well aware that its allegedly infringing products were being sold in Texas. Indeed, it sent over 150 of the products directly to Texas. Thus, the possibility of a lawsuit in Texas could not have come as a surprise to Siroflex, especially since Siroflex knew of the intellectual property rights of Hupp, a Texas resident, since September 1992 and knew that Hupp would be injured there as a result of its actions.

Whether Siroflex satisfies the more stringent test enunciated in *Asahi* is a closer question. But, the Court concludes, albeit on a relatively modest record, that Hupp has sufficiently shown that Siroflex purposefully availed itself of the advantages of conducting business activities in Texas. Siroflex did more than merely sell its products to wholesalers without the knowledge of where its products would end up. Siroflex intended that its wholesalers sell its products across the nation and actively encouraged this activity. Moreover, Siroflex facilitated this national marketing and selling scheme by filling orders that it received from wholesalers and directly shipping its products to the customers nationwide and particularly in Texas.

Siroflex stresses that it had no control over the destination of the products it shipped directly to customers—it just blindly filled orders sent by the wholesalers. But, this innocent characterization of Siroflex's actions misses the mark. Siroflex had the power and right not to fill any of the orders it received since it "accepted" the orders at its base of operations in California. Moreover, Siroflex did not have to enter the mail-order business in the first place.

Siroflex cites *Plastic Films, Inc. v. Poly Pak America, Inc.*, 764 F.Supp. 1238, 1240

(W.D.Mich.1991), for the proposition that the sale of one of its allegedly infringing products does not constitute an infringing sale for the purposes of establishing personal jurisdiction. However, in *Plastic Films,* the defendant never mailed the allegedly infringing product directly into the forum state, although it had mailed other products there. The defendant had taken an order for the product from someone in the forum state but mailed it to another state. *Id.* The court also noted that the defendant had never solicited sales of the allegedly infringing product in the forum state and had no wholesalers of that product in the state. *Id.*[2]

Moreover, the intentional nature of Siroflex's alleged tortious actions favor this Court's exercise of personal jurisdiction. "Although the defendant's lack of control over distribution of the product in the forum state may weigh against jurisdiction in a negligence action, that lack of control will not bar jurisdiction when the plaintiff has alleged an intentional tort." *Dakota Indus. v. Dakota Sportswear,* 946 F.2d 1384, 1390–91 (8th Cir.1991) (citing *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984)). In *Dakota,* the court used this principle in an intellectual property infringement action to bolster its decision that the alleged infringer had purposefully availed himself of the forum state where the intellectual property owner resided and where infringing articles where sold.

*Imagineering, Inc. v. Van Klassens, Inc.,* 797 F.Supp. 329 (S.D.N.Y.1992), also supports the Court's decision here. In *Imagineering,* the court found that the sale of two allegedly infringing products over the previous five years in the forum state was sufficient to assert personal jurisdiction over the defendant. *Id.* at 331–32.

Additionally, the Court concludes that Siroflex's contacts with Texas, the shipment of allegedly infringing articles into the state, are adequately related to this infringement and unfair competition action to provide the necessary nexus for this Court to exercise specific personal jurisdiction over Siroflex. *See Plastic Films,* 764 F.Supp. at 1241.

■ Next, the Court must determine whether asserting personal jurisdiction over Siroflex would violate traditional notions of fair play and substantial justice. This requires the Court to consider:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–77, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (citations omitted). However, the Supreme Court has indicated that a defendant who has purposefully directed his activities toward the forum state, as Siroflex has done, must present a compelling case to show that personal jurisdiction is lacking. *Ensign–Bickford,* 817 F.Supp. at 1031.

In the present case, the Court concludes that the exercise of personal jurisdiction over Siroflex is consistent with the constitutional requirements of fair play and substantial justice. Although Siroflex argues that the burden on it would be great if it was forced to litigate the matter here because it is a small business, Texas has a great interest in adjudicating this dispute in which a Texas resident is alleging that Siroflex consciously injured him in Texas. Moreover, Hupp's interest in obtaining convenient and effective relief is very important in this case. Hupp has stated that he also is a small businessman who can ill afford to litigate this matter elsewhere, particularly California.

It would be patently unfair, under these circumstances, to allow a manufacturer to actively encourage the national selling of an allegedly infringing article and to knowingly ship that article into a patentee's home state with impunity and without being held ac-

---

**2.** The other cases cited by Siroflex to support its position are unpersuasive and distinguishable because they involve claims not involving tortious acts. They are *Aviles v. Kunkle,* 978 F.2d 201 (5th Cir.1992); *Stuart v. Spademan,* 772 F.2d 1185 (5th Cir.1985); *Charia v. Cigarette Racing Team, Inc.,* 583 F.2d 184 (5th Cir.1978).

countable in that state. To conclude otherwise would encourage blatant infringement and severely impair "the little guys'" abilities to enforce their patents and other intellectual property rights, little guys whose efforts and ingenuity are a cornerstone of our American heritage.

For these reasons, the Court concludes that it can constitutionally exercise personal jurisdiction over Siroflex, and Siroflex's motion to dismiss this action for lack of personal jurisdiction and improper venue is DENIED.[3]

### VENUE

Siroflex requests the Court to transfer this action to the Central District of California under 28 U.S.C. § 1404(a) which states: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought."

■ This Court has written at length on the standards by which it considers a § 1404(a) motion, and the policies behind those. *See Dupre v. Spanier Marine Corp.,* 810 F.Supp. 823 (S.D.Tex.1993); *Continental Airlines v. American Airlines,* 805 F.Supp. 1392 (S.D.Tex.1992); *Sanders v. State Street Bank & Trust Co.,* 813 F.Supp. 529 (S.D.Tex. 1993). In brief, it is well settled that the party moving for a change of venue pursuant to 28 U.S.C. § 1404(a) has the burden of demonstrating why the forum should be changed. *Dupre,* 810 F.Supp. at 825. Whether to transfer a case under this section is a decision which rests within the sound discretion of the trial court. *See Jarvis Christian College v. Exxon Corp.,* 845 F.2d 523 (5th Cir.1988).

■ In deciding to transfer a case, a court must consider several factors: the availability and convenience of witnesses and parties, the location of counsel, the location of books and records, the cost of obtaining attendance of witnesses and other trial expenses, the place of the alleged wrong, the

possibility of delay and prejudice if transfer is granted, and the plaintiff's choice of forum. *Dupre,* 810 F.Supp. at 825. The Court examines in turn each of these factors in the context of this case.

#### A. Availability and Convenience of Witnesses and Parties.

■ This factor is arguably the most important of those listed. *Id.* As this Court explained in *Continental Airlines,* 805 F.Supp. at 1395, in considering the availability and convenience of witnesses, a court must concentrate primarily upon the availability and convenience of key witnesses. *Dupre,* 810 F.Supp. at 825. The convenience of one key witness may outweigh the convenience of numerous less important witnesses.

■ Furthermore, the moving party must do more than make a general allegation that certain key witnesses are needed. *Id.* The movant must specifically identify the key witnesses and outline the substance of their testimony. *Id.; Continental Airlines,* 805 F.Supp. at 1396.

If these requirements are met, this Court will often transfer a case in which most of the crucial witnesses expected to testify live more than one hundred miles from Galveston. This is particularly true if all parties reside out of Texas. However, this sentiment is tempered if these key witnesses are employees of the moving party. In such cases, the moving party can compel those witnesses to attend the trial.

*Dupre,* 810 F.Supp. at 825.

Siroflex has only tersely claimed that all of *its* witnesses reside in California, and thus, it would be more convenient for *it* to litigate this matter in California. It has wholly failed to identify with particularity its key witnesses and outline their purported testimony.

Another consideration in analyzing the availability and convenience of witnesses is where the only result is to shift the balance of inconveniences from the moving party to

---

**3.** Immediately after the Court rendered the present decision, the Federal Circuit published an opinion which strongly supports, if not man-

dates, the Court's present conclusion. *See Beverly Hills Fan Co. v. Royal Sovereign Corp.,* 30 U.S.P.Q.2d 1001, —— F.3d —— (Fed.Cir.1994).

the non-moving party. *Id.* at 826. If the Court were to transfer this case, great inconvenience shifting would occur. Apparently, all of Siroflex's witnesses reside in California and most of Hupp's in Texas. Thus, the primary result of this transfer would be to shift the inconvenience to Hupp which weighs against transferring this case to California.

### B. Location of Counsel.

The Court concurs with legion other courts that of the factors listed location of counsel is entitled to the least consideration. *Id.* However, the Court will give some weight to location of counsel if the plaintiff chooses local counsel to bring the suit. This fact goes to the plaintiff's choice of forum, which *is* entitled to great deference. *Id.* In the present case, both lead counsel for the parties reside in the Southern District of Texas.

### C. Location of Books and Records.

The location of books and records is important to whether a case should be transferred. In the present case, Siroflex claims that all of its books and records are in California but it does not consider the location of Hupp's.

> Moreover, even if the number of documents is relatively large, under Local Rule 11, the admissibility of documents is determined before trial. The Court can assure the parties that they will need to transport to Galveston only those relevant, noncumulative documents necessary for trial.

*Id.* at 827. Thus, this factor only weighs slightly, if at all, in favor of transfer.

### D. Cost of Obtaining Attendance of Witnesses.

In any case, parties encounter certain unavoidable costs and encumbrances in going to trial. It is rare in federal court that the chosen forum is the least expensive venue for every individual affiliated with the dispute. Notwithstanding, with advances in communication, transportation, and the preservation of testimony, costs and encumbrances that were once oppressive are now usually surmountable. Additionally, parties can also keep costs down by taking advantage of this Court's liberal policy of allowing the succinct presentation of deposition testimony at trial.

In the present case, whether the case is litigated here or in California, one party will bear substantially all of the cost of travel. Moreover, a transfer would not alleviate the overall cost to both parties. Thus, this factor bears no weight upon the Court's present determination.

### E. Place of the Alleged Wrong.

This Court possesses a compelling interest in ensuring that individuals who are injured within this district receive prompt and fair compensation for their injuries. Therefore, in this case, and in general, if a plaintiff's injuries occur within the Southern District of Texas, this Court gives great weight to the plaintiff's choice of this court as the forum in which to seek relief. However, this factor, like the other factors, is only part of the equation.

*Id.* at 827. Hupp's injuries occurred here in the Southern District of Texas which weighs greatly in favor of the Court retaining the matter.

### F. Possibility of Delay or Prejudice in Transfer Granted.

When considering a § 1404(a) motion to transfer, a prompt trial is relevant to the convenience of parties and witnesses and the interest of justice. *Id.* The Court is certain that, because it has wholeheartedly embraced the policies and goals of the Civil Justice Reform Act of 1991, and because it has enjoyed enormous support from its bar in its pursuit of the Act's lofty aspirations, it can and consistently does dispose of cases at least as expeditiously and cost-efficiently as any other court in the nation. As an example, the trial track at this Court is, for most cases, between five to nine months from the Rule 16 conference, well below the average trial track for almost all other federal district courts. In the present case, the Court has already given this case a firm trial date of January 17, 1995, only 9 months from the Rule 16 conference. Because of the earnest desire of this Court to bring the cases on its docket promptly to trial, the possibility of delay or prejudice if the case is transferred

has always played a large role in this Court's analysis. *Id.* at 828.

### G. Plaintiff's Choice of Forum.

 This Court subscribes to the view that the plaintiff's choice of forum is entitled to great deference and should be honored where factually justified, as it is here. *Id.; Continental Airlines,* 805 F.Supp. at 1394. Thus, this factor weighs greatly against transferring this matter to California.

After careful consideration of the totality of the circumstances, the Court concludes that the weight of the relevant factors dictates that the case remain in this Court. Consequently, Siroflex's motion for a transfer to the Central District of California is DENIED.

At this juncture, the Court strongly encourages the parties to seriously consider settling this matter promptly. This type of litigation between two small business entities like Hupp and Siroflex will only severely damage both businesses needlessly, when an amicable solution, like a mutually acceptable license agreement, could prove extremely beneficial to both. Although the Court is not prejudging this matter, an *initial* review of the parties' pleadings and briefs reveal that Hupp's case appears to have real prima facie merit, and the Court takes a dim view of *proven* infringers. That is not to say that Siroflex may not ultimately prevail in this matter: it is merely intended to sincerely encourage the parties to realistically consider, deep in their heart of hearts, the possibility of an agreeable end to this matter. As a further incentive, the Court ORDERS the parties to file a summary of the status of their settlement efforts within 45 days. At that time, the Court will consider referral of this matter to mediation.

In conclusion, the Court finds that it has personal jurisdiction over Siroflex, and thus, its motion to dismiss on this ground is DENIED. Moreover, Siroflex's alternative motion to transfer venue to the United States District Court for the Central District of California is DENIED. The parties are further ORDERED to file a summary of their settlement negotiations within 45 days.

Furthermore, the parties are ORDERED to file nothing further on the resolved issues in this Court, especially motions to reconsider or the like, *unless* they can present *compelling* and *relevant* new evidence or legal authority which they could not, through the exercise of due diligence, have presented on original submission of these motions. *Any and all* further relief shall be sought in due course from the appropriate appellate court. The parties shall each bear their own costs incurred herein to date.

IT IS SO ORDERED.