# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
October 26, 2021 Session

## DILLON BROOKS v. HEATHER AVERY ANDREWS

**Appeal from the Chancery Court for Shelby County**
**No. CH-20-1527-1  JoeDae L. Jenkins, Chancellor**

_____

## No. W2021-00106-COA-R10-JV
_____

This extraordinary appeal arises from an alleged biological father's complaint for "emergency custody," injunctive relief, and to set child support, filed in the Shelby County Chancery Court. The chancery court immediately entered a restraining order requiring that the child either remain in Shelby County or be returned to Shelby County in the event she had been removed. It also entered a temporary injunction requiring the mother to place the child in the custody of the alleged father pending further orders. Counsel for the mother filed a notice of limited appearance and a motion to dismiss the complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, insufficiency of service of process, and failure to state a claim. The mother submitted affidavits and other proof in support of her position that she and the child were residents of California and had not been present in the State of Tennessee when the complaint was filed or since, so there was no basis for asserting temporary emergency jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act, Tenn. Code Ann. § 36-6-219. She also argued that the alleged father had no right to custody of the child because he had never obtained an order establishing paternity. At a hearing, the chancellor orally denied the mother's motion to dismiss. The mother filed an application for an extraordinary appeal to this Court pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure and requested a stay of the trial court proceedings. The alleged father then filed an amended complaint. On the same date, this Court stayed the proceedings in the trial court and directed the mother to obtain the entry of a written order memorializing the chancellor's oral ruling. Thereafter, the chancery court entered a lengthy written order denying the mother's motion to dismiss on all grounds asserted. This Court granted the mother's application for an extraordinary appeal and framed the single issue as whether the alleged father had standing to file the complaint for emergency custody, for injunctive relief, and to set child support in Shelby County Chancery Court. We now vacate the trial court's orders exercising temporary emergency jurisdiction, reverse in part the order denying the motion to dismiss, and remand for further proceedings.

**Tenn. R. App. P. 10 Extraordinary Appeal; Judgment of the Chancery Court Vacated in Part, Reversed in Part, and Remanded**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Joseph W. Smith, R. Miles Mason, and William G. Buie, IV, Germantown, Tennessee, for the appellant, Heather Andrews.

Holly J. Renken and Lucie Brackin, Memphis, Tennessee, for the appellee, Dillon Brooks.

## OPINION

### I.   FACTS & PROCEDURAL HISTORY

Dillon Brooks ("Mr. Brooks") is a professional basketball player for the Memphis Grizzlies.  He has a daughter who was born out of wedlock in October 2019 to Heather Andrews ("Mother").  Mother travels frequently and lives what the trial court aptly described as a "highly mobile lifestyle."  According to Mr. Brooks, he first met Mother in Las Vegas in 2018, but she was living in Dallas at the time.  Mr. Brooks claims that Mother initially flew from Dallas to Memphis to visit him, but after she became pregnant with their child, he believed that she had moved to Nevada where her parents lived.  However, Mother produced a lease agreement during the course of this litigation indicating that she had leased a home in Los Angeles for a term of two years beginning on February 1, 2019, and ending on February 1, 2021.

A "prenatal paternity test" indicated a 99.9 percent probability that Mr. Brooks was the biological father of Mother's child.  Mother gave birth to the subject child in Las Vegas in October 2019.  On December 30, 2019, when the child was two months old, Mr. Brooks filed a complaint for custody in Nevada.  On February 14, 2020, Mother filed a complaint for custody and child support in California.

Despite the ongoing litigation, in July 2020, Mother and the child began making trips to Memphis to spend time with Mr. Brooks.  The parties dispute whether Mother intended to move to Memphis during this timeframe.  Mr. Brooks and Mother jointly signed a lease on a condo in Memphis.  The parties stipulated to dismissal of Mr. Brooks' Nevada lawsuit in October 2020.  Mother dismissed her California lawsuit on November 19, 2020. The parties' relationship deteriorated quickly thereafter.  Mr. Brooks spent a few days with the child at the condo in Memphis for the Thanksgiving holiday.  However, text messages between Mr. Brooks and Mother from early December indicate that the parties were in a heated argument over the child.  On December 4, Mother sent a text message warning Mr. Brooks not to threaten her or the child and insisting that her child would never be taken from her.

On December 10, 2020, Mr. Brooks filed a "Complaint for Emergency Custody, for Injunctive Relief, and to set Child Support" in the chancery court of Shelby County, Tennessee. At the outset, Mr. Brooks alleged that he was a resident of Shelby County. Mr. Brooks' complaint acknowledged that the child, now thirteen months old, was born in Las Vegas in October 2019 and that Mother claims to have lived in California with the child from December 2019 through June 2020. However, Mr. Brooks alleged, "[u]pon information and belief," that Mother and the child had resided in Shelby County since July 2020. Mr. Brooks mentioned the previous litigation in Nevada and California but stated that the parties had disputed which state had jurisdiction over the child and that no custody order had been entered in those cases. Mr. Brooks asked the chancery court to issue an emergency custody order pursuant to Tennessee Code Annotated section 36-6-219 of the Uniform Child Custody Jurisdiction and Enforcement Act, ("UCCJEA"), which provides, in pertinent part:

> A court of this state has temporary emergency jurisdiction if the child is *present in this state* and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

Tenn. Code Ann. § 36-6-219(a) (emphasis added).[1] Regarding the child's presence in the state, Mr. Brooks' complaint conceded that "Mother has possibly removed the child from Shelby County Tennessee," but he claimed that Mother had advised him that the child was in Memphis as recently as December 8. As for the allegation of mistreatment or abuse, Mr. Brooks alleged that Mother had repeatedly exposed the child to Covid-19 through her frequent travel and recently exhibited "unstable behaviors." Mr. Brooks alleged that Mother had been traveling all over the United States and Canada with the child since the Covid-19 pandemic began in March 2020, flying by airplane with the child at least twelve times but "likely significantly more." Mr. Brooks alleged that the child had contracted Covid-19 "while in the care of Mother" two months earlier, on or about October 10, 2020. He alleged that the child had also contracted a staph infection "while in the care of the Mother." Mr. Brooks asserted that the parties' relationship began to deteriorate shortly after they agreed to dismiss the other litigation, and Mother had been incessantly contacting him from various telephone numbers and relentlessly posting disparaging comments about him on social media. He alleged that Mother was attempting to harm his career and cause him to lose his employment. Mr. Brooks claimed that he was currently providing financial support for the child but that his career would suffer if Mother continued her behavior. He

---

[1] According to the statute's Official Comment, it provides for "an extraordinary jurisdiction reserved for extraordinary circumstances." Tenn. Code Ann. § 36-6-219 Official Cmt. Under this section, "a court may take jurisdiction to protect the child even though it can claim neither home State nor significant connection jurisdiction." *Id.* However, "a custody determination made under the emergency jurisdiction provisions of this section is a temporary order" and intended "to protect the child until the State that has jurisdiction under Sections 201-203 enters an order." *Id.*

- 3 -

also alleged that Mother had recently threatened him, via the December 4 text message, if he attempted to take the child from her. He attached various messages and a social media post and asserted that Mother's "bizarre and reckless behavior" warranted grave concern about her mental state. Thus, Mr. Brooks alleged that it was necessary for the court to exercise temporary emergency jurisdiction to protect the child.

Mr. Brooks asked the court to immediately enjoin Mother from removing the child from Shelby County, or, if she had already done so, to order the immediate return of the child to Shelby County. He also sought an immediate injunction preventing Mother from disparaging him on social media or contacting his employer. Mr. Brooks also requested "temporary emergency custody" of the child pending further orders. Mr. Brooks' complaint acknowledged that he was not listed on the child's birth certificate and that there was no order establishing paternity of the child. However, Mr. Brooks alleged that the child was "conclusively" his child pursuant to the prenatal paternity test, which he attached to his complaint. Mr. Brooks described himself as "an active parent when he is not in-season with the NBA or training." He alleged that he had most recently spent time with the child from November 22 to November 26, 2020.

Additionally, Mr. Brooks alleged that the chancery court had jurisdiction to set child support consistent with Tennessee's child support guidelines pursuant to Tennessee Code Annotated section 36-5-2201(a)(3), of the Uniform Interstate Family Support Act. Mr. Brooks attached to his complaint an affidavit from his attorney, which stated,

1. The current location of [Mother] is unknown, although [Mr. Brooks] believes her to currently be in Shelby County, Tennessee.
2. No attempt at notice has been made to [Mother], as [Mr. Brooks] fears that [she] will leave the jurisdiction of this Court with the minor child should she know in advance about the filing of the herein action.

Mr. Brooks also attached other exhibits to his complaint, including documents regarding the litigation in Nevada and California and the parties' lease on the Memphis condo.

On the same day Mr. Brooks' complaint was filed, a chancellor, sitting by interchange, signed a fiat directing the issuance of a temporary restraining order as requested in the complaint. It provided that the child must remain in Shelby County or be returned to Shelby County in the event that she had already been removed. It further restrained Mother from making disparaging social media posts about Mr. Brooks or publicly disparaging him or contacting his employer in any way. Although Mr. Brooks' request for temporary emergency custody was not immediately granted, a hearing was scheduled for one week later, on December 18, for Mother to appear and show cause why Mr. Brooks should not be granted the relief he sought.

A Zoom hearing was held on December 18, but only Mr. Brooks and his attorney

appeared and participated. Mr. Brooks' counsel explained that in the days after the filing of the December 10 complaint, they had attempted to obtain service of process on Mother at the Memphis condo several times to no avail. Mr. Brooks' counsel submitted her own affidavit, stating that service had been attempted at the Memphis condo on December 10 and December 11, but it was not completed. Mr. Brooks' counsel said that they had also attempted service at the home of Mother's parents in Nevada on December 12, but after the child's grandmother refused to accept service, it was left on the doorstep on December 14. Counsel described attempts to contact Mother via social media, email, and text message, and she suggested that Mother knew about the litigation as reflected by her recent social media posts. Counsel maintained that an emergency custody order was necessary to protect the child because of Mr. Brooks' concerns about Mother's mental state and the fact that Mother continued flying by airplane with the child even though she had contracted Covid-19 two months earlier.

Mr. Brooks testified briefly during the Zoom hearing. He testified about the paternity test establishing that he is the child's biological Mr. Brooks. He said he had last spent time with the child for a few days at the end of November at the condo in Memphis. Mr. Brooks submitted a photograph of Mother's vehicle (with a Nevada license plate), which remained parked at the Memphis condo. However, Mr. Brooks said Mother had not responded to his text messages about the hearing. Mr. Brooks testified that Mother had used about thirty different telephone numbers to contact him over the last few months, and he had attempted to contact her about the hearing using two of those numbers, although one message was admittedly undelivered. Mr. Brooks said that Mother had listed a couch for sale on "Facebook Marketplace" on December 14, with the location shown as Memphis. However, he said she had also posted on social media a photograph of herself and the child on a private plane with the caption "Catch Me If You Can."

Mr. Brooks testified that Mother had flown on airplanes with the child at least fifteen times in the months since the pandemic began and that the child had already contracted Covid-19, although he did not testify as to how the child was affected by the virus or whether she had any lingering effects two months later. He said the child had also contracted a staph infection on her toe "when she was staying in LA." He suggested that the child contracted the infection after Mother had her carpets cleaned and failed to wait long enough afterward before the child crawled and walked on them. He also described Mother's disparaging social media posts and attempts to interfere with his employment. Mr. Brooks said he had concerns about Mother's mental health and how it might impact his daughter. Numerous exhibits were admitted into evidence. At the conclusion of the testimony, the chancellor announced that he would be entering an order granting the request for a temporary injunction and requiring Mother to bring the child back to Memphis.

On December 22, 2020, the chancery court entered an "Order Issuing Injunctive Relief." The chancery court found sufficient evidence to suggest the child may be in

harm's way and in danger of irreparable harm if left in Mother's custody. Thus, the chancery court entered a temporary injunction placing the child in Mr. Brooks' custody. Mother was ordered to return the child to Shelby County. She was also enjoined from making disparaging comments about Mr. Brooks in any way or contacting his employer. Finally, the order stated that an attachment pro corpus would issue for the body of the child, such that any official legal authority in the jurisdiction where the child was located and with an opportunity to take custody of the child should do so and return the child to Mr. Brooks.

In January, Mr. Brooks filed a motion for default judgment and a motion to compel disclosure of the location of Mother and the child. Days later, counsel for Mother filed a notice of limited appearance, indicating that he would be appearing for the sole purpose of seeking dismissal of Mr. Brooks' complaint. On January 28, Mother filed a motion to dismiss the complaint pursuant to Tennessee Rule of Civil Procedure 12.02(1), (2), (5), and (6), asserting lack of subject matter jurisdiction, lack of personal jurisdiction, insufficiency of service of process, and failure to state a claim upon which relief can be granted. Mother pointed out that Mr. Brooks' complaint requested determinations of custody and child support for a child born out of wedlock, yet he admitted that he had not obtained an order establishing paternity and that his name is not listed on the birth certificate. Mother argued that Mr. Brooks could not simply attach a DNA test to his complaint and establish himself as the father or vest himself with authority to seek custody and establish child support. In the absence of any legal establishment of Mr. Brooks' paternity, Mother argued that he was required to bring this action in a court with subject matter jurisdiction to establish parentage. Mother argued that the chancery court of Shelby County lacks subject matter jurisdiction to determine parentage according to Tennessee Code Annotated section 36-2-307.[2] Because Mr. Brooks had not established any right to custody of the child under Tennessee law, Mother argued that his complaint should be dismissed for failure to state a

---

[2] The statute provides, in pertinent part:

> The juvenile court or any trial court with general jurisdiction shall have jurisdiction of an action brought under this chapter [regarding parentage]; provided, that, in any county having a population not less than eight hundred twenty-five thousand (825,000) nor more than eight hundred thirty thousand (830,000), according to the 1990 federal census or any subsequent federal census, only the juvenile court shall have jurisdiction of an action brought under this chapter.

Tenn. Code Ann. § 36-2-307(a)(1). *See also* Tenn. Op. Att'y Gen. No. 10-91 (Aug. 9, 2010) ("As provided in Tenn. Code Ann. § 36-2-307(a)(1), in a county that has a population between 825,000 and 830,000 according to the 1990 or subsequent federal census, only the juvenile court shall have jurisdiction of an action brought under Chapter 2, Title 36. As Shelby County fell within this population bracket according to the 1990 federal census, the Shelby County Circuit and Chancery Courts do not have jurisdiction over such actions.")

claim.[3] She cited Tennessee Code Annotated section 36-2-303, which provides, "Absent an order of custody to the contrary, custody of a child born out of wedlock is with the mother."

Mother further argued that the chancery court lacked jurisdiction to enter an emergency custody order pursuant to Tennessee Code Annotated section 36-6-219 of the UCCJEA because the child was not present in this state. She argued that the UIFSA provision cited by Mr. Brooks regarding child support was inapplicable as well. She asked the chancery court to dismiss Mr. Brooks' complaint, to set aside all subsequent orders as void ab initio, and to award her attorney's fees.

Mother attached numerous exhibits to her motion to dismiss, including her own affidavit. Mother stated that after the child was born in Nevada, she and the child had moved to California and resided there ever since. Mother stated that neither she nor the child had ever relocated to Tennessee with the intention to make it their home. She acknowledged that she and the child made eight trips to Tennessee between July and November 2020, ranging in duration from two to eighteen days. However, Mother stated that neither she nor the child had been present in Tennessee since November 26, 2020. Mother stated that she had electronically signed the lease agreement on the Memphis condo from out-of-state because Mr. Brooks told her that it was necessary in case she wanted to access the condo when he was not there. She said she had moved a limited amount of personal property from her California residence to the condo and brought a vehicle for use while she was in town, but that she did not intend to establish a residence here. She said none of the expenses related to the condo were in her name. Mother also stated that Mr. Brooks had subsequently purchased the condo himself and decided to rent it, so all of her personal property was removed by November. Mother said she maintained her two-year lease on her home in California, had a post office box there, was registered to vote there, had a California driver's license, registered her car and obtained insurance in California, and maintained a California address on her passport application, bank accounts, and phone bills. She attached numerous supporting documents to her affidavit. She also submitted the affidavit of the child's nanny since birth, who stated that Mother and the child had resided in California since the child's birth. The nanny stated that Mother and the child began traveling periodically to Tennessee in late July to visit Mr. Brooks and that she had accompanied them for almost all of their visits. However, the nanny stated that their last visit to Tennessee was in November 2020.

Mr. Brooks' motions for default judgment and to compel disclosure of the location of the child and Mother were already set for a hearing on January 29, the day after Mother

---

[3] "Lack of standing may be raised as a defense under Rule 12.02(6) of the Tennessee Rules of Civil Procedure." *Heredia v. Gibbons*, No. M2016-02062-COA-R3-CV, 2019 WL 3216623, at *3 (Tenn. Ct. App. July 17, 2019) *perm. app. denied* (Tenn. Dec. 4, 2019) (citing *Knierim v. Leatherwood*, 542 S.W.2d 806, 808 (Tenn. 1976)). Whether a party has standing is a question of law. *Id.*

filed her motion to dismiss. As such, Mother filed a motion asking the court to reconsider hearing those motions and to decide the jurisdictional issues first. At the hearing the following day, Mother's counsel appeared and again asked the court to expeditiously hear the motion to dismiss regarding the jurisdictional issues before deciding other issues in the case. Mother's counsel cited Tennessee Code Annotated section 36-6-210 of the UCCJEA, which states, "If a question of existence or exercise of jurisdiction under this part is raised in a child-custody proceeding, the question, upon request of a party, must be given priority on the calendar and handled expeditiously." However, Mr. Brooks' counsel insisted that she needed thirty days to file a response to the motion to dismiss before it was heard. Mr. Brooks' counsel conceded that the court should not go forward with hearing the motion for default judgment that day in light of Mother's filing of the motion to dismiss, but counsel did insist on proceeding with the motion to compel disclosure of Mother's whereabouts. The chancellor stated that he was aware of the filing of Mother's motion to dismiss the previous day but had only "had a cursory [] look at it." He decided to set the hearing on the motion to dismiss for a later date but nevertheless found it appropriate to proceed with hearing the motion to compel disclosure of the location of the child and Mother due to the "emergency" nature of the allegations. The chancellor suggested that Mother could have easily "showed up today and brought the baby" to demonstrate that the child was fine, then pursued the issue of jurisdiction at a later date. He stated that the UCCJEA was meant to "avoid this type of evading the jurisdictions of the court." Counsel for Mother reiterated Mother's position that the chancery court lacked subject matter jurisdiction to enter any order and suggested that she could not have appeared without waiving her objection to personal jurisdiction. Counsel also informed the court that another proceeding had been filed in California and was currently pending. (Mother had filed a parentage action in California on January 20). Counsel for Mother began to describe the various arguments set out in the motion to dismiss. However, the chancellor interrupted, stating,

> Well, when are you going -- when are you going to affirmatively address the points that I asked you to address, whether or not you're going to -- are you going to disclose or will your client disclose the address where the child is? . . . That's either a 'yes' or 'no,' at this point, because I've given you a good leeway from your argument and you're going -- defaulting back to what you initially started on and the day is rapidly closing and I need an answer to these questions so that I can move my docket.

The chancellor said that he did not intend to resolve the motion to dismiss that day but indicated that he intended to proceed with other matters in the meantime. Mr. Brooks' counsel announced that she would be filing a petition for contempt against Mother later that day, and the trial judge inquired about setting it for a hearing the following week. When the chancellor asked Mother's counsel about his calendar availability, counsel emphasized his notice of limited appearance and that he could not address other matters and appear with his client for a contempt hearing without a ruling from the trial court on the jurisdictional issues. He again asked the court to stay consideration of any other matters

- 8 -

until the motion to dismiss was resolved.  The chancellor interrupted, with an immediate ruling on the motion to dismiss:

> THE COURT: Let me give you a ruling, then, that you can take back to your client. It is the Court's information -- do you have a pen? Are you ready to take it down?
>
> MR. SMITH: We have the court reporter, Your Honor.
>
> THE COURT: It is the Court's position that based upon the allegations that were made, that this child has already been exposed to Covid-19 and has, indeed, contracted it. And that notwithstanding that, the mother continues to travel to various and sundry places, exposing the child yet again to the virus. The mother also has failed to provide [Mr. Brooks] with any information as to the condition of the child and whether or not the virus has adversely affected the health of the child.
>
> This Court is of the opinion that the case is an emergency situation and the child needs the protection of this Court in order to protect the child. The mother's failure to cooperate with [Mr. Brooks] and with Counsel for [Mr. Brooks] and with the Court having sent its orders out heightens the Court's concern about this situation. The mother has certainly avoided service from the allegations that have been presented to the Court. The mother has not submitted to the jurisdiction of either court. There have been informations from Counsel today that the mother may submit to the jurisdiction of one Court, but there is no proof to this Court that any of that has been done. The mother has redacted her address and has not responded to requests from [Mr. Brooks'] counsel.
>
> The Court is overly concerned about the welfare of this child. It is a easy chore to communicate with [Mr. Brooks] and/or [Mr. Brooks'] counsel. There has been some information to the Court that she is concerned for her safety without any proof of the same.
>
> I have advised counsel that the Court is willing to make sure that the child -- that the mother is safe, provided the – that her Attorney [] gives the Court some assurance of the child's whereabouts and the child's safety. Counsel has not done so. So the Court is going to take jurisdiction of this case. The motion to dismiss for lack of jurisdiction is denied.
>
> Now, let's move on.

As the chancellor's oral ruling reflects, it did not contain any discussion of the UCCJEA, UIFSA, or Tennessee's parentage statutes, only the chancellor's concern about the "emergency" nature of the allegations.

Immediately after the chancellor's oral ruling, Mr. Brooks' counsel asked the

chancellor to enter an order containing "a legal finding of paternity," suggesting that the chancery court "does have the authority to do that" based on the DNA test attached to Mr. Brooks' complaint. Mother's counsel asked for a stay pending an appeal, which the chancellor denied. The chancellor explained that he intended to proceed by setting a hearing on Mr. Brooks' motion for default judgment and petition for contempt. He ultimately decided to address Mr. Brooks' oral request for a legal finding of paternity at the next hearing. The chancellor granted Mr. Brooks' motion to compel disclosure of the location of the child and Mother by 3:00 the following Monday. The chancellor asked counsel for Mr. Brooks to prepare an order denying Mother's motion to dismiss on all grounds asserted therein.

After the chancellor's oral ruling at the hearing on Friday, January 29, Mother filed an application for an extraordinary appeal to this Court on Monday, February 1. She also sought an immediate stay of the trial court proceedings pending resolution of the appeal. Mother argued that the trial court had so far departed from the accepted and usual course of judicial proceedings as to require immediate review and that review was necessary for a complete determination to be possible in a later appeal. She framed six issues for review on appeal related to the trial court's various rulings. On the same day that the application for an extraordinary appeal was filed, the chancery court entered its written order granting Mr. Brooks' motion to compel disclosure of the location of the child and Mother.

The following day, on February 2, Mr. Brooks filed (in the chancery court) a motion for leave to file a response to Mother's motion to dismiss, in light of the fact that the motion to dismiss had been filed the day before the January 29 hearing and Mr. Brooks had not yet filed a response. However, Mr. Brooks noted that the chancellor had already orally denied Mother's motion to dismiss during the January 29 hearing. Mr. Brooks also noted that Mother had filed an application for an extraordinary appeal of the oral ruling and sought a stay of the trial court proceedings. Still, Mr. Brooks sought the opportunity to file a response to the motion to dismiss with supporting affidavits in order to contest Mother's affidavits regarding her residence. The following day, on February 3, the chancery court entered an order granting Mr. Brooks leave to file a response to the motion to dismiss.

On February 5, Mr. Brooks filed an amended complaint in chancery court, which he entitled, an "Amended Complaint for Emergency Custody, for Injunctive Relief, and to set Child Support, *and for Custody of the Minor Child.*" (emphasis added). Mr. Brooks incorporated by reference the allegations of his original complaint, but he also added the following paragraphs that are relevant to this appeal:

> 12. At the time [Mr. Brooks] filed his initial Complaint, [Mr. Brooks] was seeking an emergency order for custody of the child pursuant to T.C.A. § 36-6-219.
> 13. As an amendment to his initial Complaint, [Mr. Brooks] now seeks an initial custody determination from this Court pursuant to T.C.A. § 36-6-216.

- 10 -

. . . .

21.     [Mr. Brooks] alleges that this Court has jurisdiction to make an initial custody determination pursuant to T.C.A. § 36-6-216 because the child did not have a "home state" for more than six (6) months prior to the filing of [Mr. Brooks'] initial Complaint.

Describing Mother's actions during the litigation thus far, Mr. Brooks asserted that it was in the child's best interest for him to have custody and be named primary residential parent pursuant to Tennessee Code Annotated section 36-6-106. Mr. Brooks' amended complaint also included a request for "a legal finding that he is the father of the party's minor child[.]" Mr. Brooks asserted that he was rebuttably presumed to be the father of the child due to the DNA test and Tennessee Code Annotated section 36-2-304. Also in his amended complaint, Mr. Brooks asserted, for the first time, that he had filed his initial complaint in chancery court rather than juvenile court because an outbreak of Covid-19 in the courthouse had resulted in the juvenile court having a restricted docket. Mr. Brooks attached to his amended complaint a proposed parenting plan, affidavits, and numerous text messages. Notably, in Mr. Brooks' attached affidavit, he stated, "I have not seen nor known the location of my child since Thanksgiving 2020[.]"

Later in the day on February 5, hours after the filing of Mother's amended complaint in chancery court, this Court entered an order addressing the pending application for an extraordinary appeal. We noted that most of the oral rulings challenged by Mother had not yet been reduced to written orders. As a result, we directed Mother to obtain entry of signed written orders for each oral ruling challenged. However, we added, "[A] stay of proceedings in the trial court is appropriate in this case pending our decision on the Rule 10 application. All orders and proceedings in the trial court pertaining to this matter, other than the orders described above, are hereby stayed pending further Order of this court."

Later that same afternoon, Mr. Brooks filed his response to Mother's motion to dismiss in chancery court. He attached affidavits and other documents to his response. Mr. Brooks' response stated that "he believed Mother and the minor child may have still been in the State of Tennessee when he filed his initial complaint" on December 10, as "Mother indicated to him as recently as December 8, 2020 that she and the child were still in Tennessee." However, he admitted that he "had no way of knowing with certainty that the minor child was still present in Tennessee at the time of filing because Mother was and continues to actively conceal the child's location." Mr. Brooks argued that Mother and the child traveled so extensively that they had no home state prior to the filing of Mr. Brooks' complaint on December 10. Thus, Mr. Brooks argued that the chancery court should have jurisdiction under the UCCJEA to establish an initial custody order pursuant to Tennessee Code Annotated section 36-6-216, as requested in his amended complaint, aside from any issue of temporary emergency jurisdiction under section 36-6-219. He argued that physical presence in the state is not necessary to make an initial custody determination.

- 11 -

Mr. Brooks also addressed the issue of establishing paternity in his response. Mr. Brooks admitted that he had never executed a voluntary acknowledgement of paternity or obtained an order establishing parentage. However, Mr. Brooks maintained that the DNA test vested him with standing to sue for custody and establish child support under Tennessee law. Mr. Brooks argued that the juvenile court does not have exclusive jurisdiction over parentage actions in Shelby County because Shelby County is no longer within the population range mentioned in the statute. Thus, Mr. Brooks reiterated his request for the chancery court to declare him the legal father of the child.

On February 16, the chancery court entered a 22-page written order denying Mother's motion to dismiss. The order notes that the motion was heard during the January 29 Zoom hearing but that leave was subsequently granted for the filing of a response to the motion, and various pleadings were filed after the hearing. At the outset, the order states that Mother and Mr. Brooks were unmarried and that there was no father listed on the birth certificate or order establishing paternity. The order states that Mother and Mr. Brooks were "presumed to have a daughter together" pursuant to the DNA test and the rebuttable presumption provided in Tennessee Code Annotated section 36-2-304. However, the order emphasized that the court had thus far "made no determination of parentage." The order expressly noted that Mr. Brooks had filed an amended complaint in which he requested "a paternity determination" but said "[t]his matter is not yet before the Court." The court acknowledged Mother's arguments regarding the juvenile court of Shelby County having exclusive jurisdiction of parentage actions, but the court reasoned that Mother's argument was not "on point in regards to the jurisdiction of the Court under Tennessee Code Annotated § 36-6-219." The court emphasized that it had "acquired jurisdiction under Tennessee Code Annotated § 36-6-219 by the emergency nature of the issues brought before the Court[.]" Having concluded that the amended complaint was not yet before the court, the chancery court emphasized that "[Mr. Brooks'] Complaint **was brought under Tennessee Code Annotated § 36-6-219**, the temporary emergency jurisdiction provision of the UCCJEA," and it did *not* seek an initial custody determination under section 36-6-216 or a parentage determination under section 36-2-307. According to the court, the authority Mother cited regarding exclusive jurisdiction "applied to a parentage action pursuant to Tennessee Code Annotated § 36-2-307" and "the jurisdiction of a Tennessee court to make an initial child custody determination pursuant to the requirements of Tennessee Code Annotated § 36-6-216," but it was "not germane to the subject matter jurisdiction of the emergency powers conferred upon this Court by Tennessee Code Annotated § 36-6-219(a)." The chancery court said it had thus far only "assumed its authority" pursuant to Tennessee Code Annotated section 36-6-219 and its power to set temporary custody on an emergency basis.[4]

---

[4] The chancery court noted that section 36-6-216 of the UCCJEA separately addresses jurisdiction to make an initial custody determination. Regarding that section, the court described the "home state" of the child as "unclear . . . in this case" but said that it had "not yet determined" whether Tennessee meets the definition of the child's home state. The court suggested that Mother and [Mr. Brooks] both have a "significant connection" to Tennessee within the meaning of section 216 despite Mother's "multiple

- 12 -

Regarding the exercise of temporary emergency jurisdiction, the court found that Mother had unnecessarily exposed the child to Covid-19 by traveling across the country with her and violated the court's orders by disparaging Mr. Brooks on social media and failing to cooperate with the court. The order states, "At the time of filing this case in Shelby County, Mr. Brooks did not know the location of Mother or the Minor Child." Despite this finding, however, the court concluded that "Mother and the Minor Child were present in the state of Tennessee at the time of the filing of the complaint[.]"

After the entry of the chancery court's lengthy order denying the motion to dismiss, Mother filed a motion pursuant to Tennessee Rule of Civil Procedure 60.01 for the trial court to correct its order, citing the significant differences in the written order and the trial court's oral ruling from the January 29 hearing. On April 22, the chancery court entered an order denying the motion to correct errors pursuant to Rule 60.01. The order clarified that the court had considered the response and affidavits filed by Mr. Brooks after the hearing but before the written order was entered. The court also said it had "discounted the veracity" of Mother's affidavit, as the documents purporting to show her residence in California showed a variety of different zip codes for the addresses used by Mother. The court said it had "question[ed] [Mother's] credibility" and declined to rely on her affidavits. To explain its finding that Mother and the child were present in the State of Tennessee when the complaint was filed, the trial court pointed to the allegation in Mr. Brooks' complaint that Mother had advised him that the child was in Memphis as recently as December 8, Mr. Brooks' testimony at the hearing about Mother's Facebook Marketplace listing of a couch for sale in Memphis on or about December 14, and the affidavit of Mr. Brooks' counsel stating that Mr. Brooks "believe[d]" Mother to be in Shelby County. The trial court reasoned that Mr. Brooks' later admission that he did not know the location of the child did not contradict the court's conclusion that the child was in Tennessee.

In light of the various written orders finally entered by the trial court, this Court allowed Mother to submit a supplemental Rule 10 application to this Court. Mother submitted an amended application with eleven issues presented for review. Mr. Brooks filed an amended answer. On June 8, this Court granted Mother's application for an extraordinary appeal, but we framed the sole issue as whether Mr. Brooks had standing to file the complaint for emergency custody, for injunctive relief, and to set child support in the chancery court of Shelby County. All proceedings in the trial court were to remain stayed pending resolution of the issue on appeal.

## II. DISCUSSION

"Parentage is an area of law governed primarily by statute." *In re C.K.G.*, 173

---

abodes." However, the court also stated that it had not yet decided whether Mr. Brooks would be considered a "person acting as a parent" within the meaning of the UCCJEA. The order never mentioned UIFSA.

S.W.3d 714, 721 (Tenn. 2005). Thus, we begin with a brief overview of Tennessee's parentage statutes, set forth in Title 36, Chapter 2 of the Tennessee Code. Tennessee Code Annotated section 36-2-301 states, "This chapter provides a single cause of action to establish parentage of children other than establishment by adoption pursuant to chapter 1 of this title, or by acknowledgement of parentage pursuant to § 68-3-203(g), § 68-3-302 or § 68-3-305(b)." The statutory scheme explicitly provides that "[a]bsent an order of custody to the contrary, custody of a child born out of wedlock is with the mother." Tenn. Code Ann. § 36-2-303. Section 304 provides five ways for a man to be "rebuttably presumed to be the father of a child," and one of those is if "[g]enetic tests have been administered as provided in § 24-7-112,[5] an exclusion has not occurred, and the test results show a statistical probability of parentage of ninety-five percent (95%) or greater." Tenn. Code Ann. § 36-2-304(a)(5). However, except under certain circumstances, these presumptions "may be rebutted in an appropriate action." Tenn. Code Ann. § 36-2-304(b)(1). Section 305 states, "Absent an agreement or an acknowledgement of parentage as prescribed by § 68-3-203(g), § 68-3-302, or § 68-3-305(b), a complaint to establish parentage may be filed." Tenn. Code Ann. § 36-2-305(b)(1). Section 307, which we have already quoted in pertinent part above, provides:

> The juvenile court or any trial court with general jurisdiction shall have jurisdiction of an action brought under this chapter; provided, that, in any county having a population not less than eight hundred twenty-five thousand (825,000) nor more than eight hundred thirty thousand (830,000), according to the 1990 federal census or any subsequent federal census, only the juvenile court shall have jurisdiction of an action brought under this chapter.

Tenn. Code Ann. § 36-2-307(a)(1). Section 311 provides that upon establishing parentage, "the court shall make an order declaring the father of the child," and the order must also include a determination of custody and visitation pursuant to chapter 6 of Title 36 and a determination of child support pursuant to chapter 5. Tenn. Code Ann. § 36-2-311(a)(9)-(11).

This Court examined the rights of unwed parents in relation to these statutes in two recent cases. The first was a case strikingly similar, procedurally, to this one -- *Milton v. Harness*, No. E2017-00092-COA-R10-CV, 2017 WL 837704 (Tenn. Ct. App. Mar. 3, 2017). In *Milton*, the mother and father had a child born out of wedlock. *Id.* at *1. When the child was an infant, DNA testing confirmed that the father was the biological father of the child. *Id.* Years later, when the mother and the child moved to Arizona, the father filed a petition in Tennessee seeking to legitimate the child and obtain custody. *Id.* at *2. The father alleged that Tennessee was the child's "home state" within the meaning of the

---

[5] "Paternity tests in parentage actions are governed by Tennessee Code Annotated § 24-7-112." *In re Michael J.*, No. M2016-01985-COA-R3-JV, 2018 WL 638250, at *2 (Tenn. Ct. App. Jan. 31, 2018) (citing Tenn. Code Ann. § 36-2-309(a)).

UCCJEA, and therefore, Tennessee had jurisdiction to make an initial custody determination. *Id.* His petition requested an injunction requiring the immediate return of the child to Tennessee and a transfer of custody to the father. *Id.* The trial court issued the requested *ex parte* injunctions based on the allegations in the complaint and denied the mother's later motion to set them aside. *Id.* at *2-3. She then filed an application for an extraordinary appeal to this Court. *Id.* at *3. We granted the application and concluded that the child should be immediately returned to the mother pending further action on the petition. *Id.* We found that the trial court's *ex parte* injunctions were "without legal authority" and resulted in the mother losing "her unqualified right to exclusive custody of [the child] during the pendency of the proceedings below[.]" *Id.* at *4. Pursuant to Tennessee Code Annotated section 36-2-303, we noted, "custody of a child born out of wedlock is with the mother" absent an order of custody to the contrary. *Id.* Despite the DNA test, we explained, "'Being a child's biological father is not sufficient, by itself, to qualify a man as a child's legal parent or as a child's putative biological father." *Id.* (quoting *In re Bernard T.*, 319 S.W.3d 586, 598 (Tenn. 2010)). We also said the fact that the father had signed an acknowledgement of paternity in another state did not "vest in him any custodial or visitation rights[.]" *Id.*

In *Baxter v. Rowan*, 620 S.W.3d 889 (Tenn. Ct. App. 2020), this Court reexamined some of the language used in *Milton* regarding the effect of a voluntary acknowledgement of paternity. The Court agreed with *Milton*'s statement that a voluntary acknowledgement of paternity "does not vest any custody rights or visitation rights upon the legal father," but we disagreed with the suggestion that the execution of a voluntary acknowledgement of paternity does not vest the father "with standing to sue for custody and visitation rights." *Id.* at 894. We explained that a voluntary acknowledgement of paternity is "a simplified procedure in which unmarried fathers may legally establish their paternity over a child without 'further order of the court.'" *Id.* at 893 (quoting Tenn. Code Ann. § 24-7-113(a)). Simply put, "a properly executed [voluntary acknowledgement of paternity] establishes a 'legal relationship' between the father and the child." *Id.* at 895. As such, a voluntary acknowledgement of paternity confers standing on the father to sue for custody or visitation rights. *Id.* The mother in *Baxter* insisted that "an order of parentage is the only mechanism by which a father may establish parentage and acquire standing to sue for custody or visitation." *Id.* at 896. We disagreed, noting that the parentage statutes expressly provide "'a single cause of action to establish parentage of children other than by adoption ... *or by acknowledgement of parentage*,*" Id.* (quoting Tenn. Code Ann. § 36-2-301), and provide that "'[a]bsent an agreement or an *acknowledgement of parentage* as prescribed by § 68-3-203(g), § 68-3-302, or § 68-3-305(b), a complaint to establish parentage may be filed.'" *Id.* (quoting Tenn. Code Ann. § 36-2-305(b)(1)). Thus, we concluded that "the Code provides for multiple ways in which parentage may be established rather than the sole option of filing suit to specifically establish same." *Id.* In sum, we explained that "an order establishing parentage is not the sole manner in which *a father may obtain standing to sue for custody and visitation rights.*" *Id.* (emphasis added).

- 15 -

In the case at bar, Mr. Brooks admits that he has not obtained an order of parentage or signed a voluntary acknowledgment of paternity in order to obtain standing to sue for custody, but he nevertheless argues that the DNA test should give him standing to sue for custody exactly like a voluntary acknowledgement of paternity, extending the reasoning of *Baxter*. We disagree. "Being a child's biological father is not sufficient, by itself, to qualify a man as a child's legal parent[.]" *In re Bernard T.*, 319 S.W.3d at 598. "Once the biological father has established his paternity, his constitutionally-protected fundamental right to parent his child vests and he is the legal father." *In re T.K.Y.*, 205 S.W.3d 343, 352 (Tenn. 2006). However, as we explained in another case, one does not legally "establish his paternity" simply by obtaining a DNA test. In *In re A.N.F.*, No. W2007-02122-COA-R3-PT, 2008 WL 4334712, at *16 (Tenn. Ct. App. Sept. 24, 2008), an appellant argued that the language from *T.K.Y.* about establishing "paternity" meant that a man "automatically became the legal father of [the child] as soon as the independently obtained DNA test established the probability of his paternity." We disagreed, emphasizing that one can become a legal parent in statutorily defined circumstances, including when paternity is *adjudicated* by a court or established through a voluntary acknowledgment of paternity. *Id.* Thereafter, the definition of a "legal parent" was amended to include the following provision:

> A man shall not be a legal parent of a child based solely on blood, genetic, or DNA testing determining that he is the biological parent of the child without either a court order or voluntary acknowledgement of paternity pursuant to § 24-7-113. Such test may provide a basis for an order establishing paternity by a court of competent jurisdiction, pursuant to the requirements of § 24-7-112.

2010 Tenn. Laws Pub. Ch. 888 (S.B. 3001); *see* Tenn. Code Ann. § 36-1-102(29)(B).

As it is, when Mr. Brooks filed this lawsuit, he had not obtained (nor did he seek) an order of parentage, he had not signed a voluntary acknowledgement of paternity, and he did not meet any of the definitions of a legal parent. Mr. Brooks had not yet established *any* legal relationship with the child. Thus, we conclude that the trial judge erred in entering its initial restraining orders awarding Mr. Brooks immediate relief regarding the child, its order issuing injunctive relief requiring Mother to immediately transfer custody of the child to Mr. Brooks, and its order granting Mr. Brooks' motion for disclosure of the location of the child. As in *Milton*, the trial court's action resulted in Mother losing "her unqualified right to exclusive custody of [the child] during the pendency of the proceedings below[.]" 2017 WL 837704, at *4.

Mr. Brooks argues, and the chancery court found, that this case is distinguishable from *Milton* because, here, Mr. Brooks sought a temporary emergency custody order pursuant to the UCCJEA, Tennessee Code Annotated section 36-6-219. The statute provides:

- 16 -

> (a) A court of this state has temporary emergency jurisdiction if the child is present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because the child, or a sibling or parent of the child, is subjected to or threatened with mistreatment or abuse.

Tenn. Code Ann. § 36-6-219(a). Without reaching the issue of whether Mr. Brooks would have had standing to seek a temporary emergency custody order of this nature under appropriate circumstances, we find that a court of this state did not have temporary emergency jurisdiction in any event because the child was not "present in this state." *See id.*

The UCCJEA "governs jurisdiction between Tennessee and other states over child custody proceedings." *Button v. Waite*, 208 S.W.3d 366, 369 (Tenn. 2006). Whether a court has jurisdiction under the UCCJEA "is a question of law over which our review is de novo with no presumption of the correctness of the ruling of the lower courts." *Id.* In another case involving the UCCJEA, this Court provided a helpful discussion of the methods for challenging subject matter jurisdiction:

> Two methods are available to challenge a court's subject matter jurisdiction. The first, and most common, is a "facial" challenge. The second is a "factual" challenge. *Thomas v. Mayfield*, No. M2000-02533-COA-R3-CV, 2004 WL 904080, at *4-5 (Tenn. Ct. App. Apr. 27, 2004), *perm. app. denied* (Tenn. Nov. 15, 2004); 2 JAMES W. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 12.30[4] (3d ed. 2005).
>
> The process used to consider a "facial" challenge to a court's subject matter jurisdiction resembles the method for deciding motions to dismiss for failure to state a claim upon which relief can be granted. *Jetform Corp. v. Unisys Corp.*, 11 F.Supp.2d 788, 789 (E.D. Va. 1998); *Avellino v. Herron*, 991 F.Supp. 722, 725 (E.D. Pa. 1997). A facial challenge makes war on the complaint itself. It asserts that the complaint, considered from top to bottom, fails to allege facts that show that the court has power to hear the case. *See, e.g., Crawford v. United States Dep't of Justice*, 123 F.Supp.2d 1012, 1013-14 (S.D. Miss. 2000). In deciding a facial challenge, the court considers the impugned pleading and nothing else. *Laird v. Ramirez*, 884 F.Supp. 1265, 1272 (N.D. Iowa 1995); *Ensign–Bickford Co. v. ICI Explosives USA, Inc.*, 817 F.Supp. 1018, 1023 (D. Conn. 1993). If a complaint attacked on its face competently alleges any facts which, if true, would establish grounds for subject matter jurisdiction, the court must uncritically accept those facts, end its inquiry, and deny the dismissal motion. *Great Lakes Educ. Consultants v. Fed. Emergency Mgmt. Agency*, 582 F.Supp. 193, 194 (W.D. Mich. 1984).
>
> "Factual" challenges to subject matter jurisdiction require a different approach both in the trial court and on appeal. A factual challenge denies

that the court actually has subject matter jurisdiction as a matter of fact even though the complaint alleges facts tending to show jurisdiction. It controverts the complaint's factual allegations regarding jurisdiction, *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1583-84 (Fed. Cir. 1993), and puts at issue the sufficiency of the evidence to prove facts that would bring the case within the court's subject matter jurisdiction, *Ensign–Bickford Co. v. ICI Explosives USA, Inc.*, 817 F. Supp. at 1023. A factual challenge to subject matter jurisdiction . . . does not require the court to convert the motion into one for summary judgment. *Chenault v. Walker*, 36 S.W.3d 45, 55-56 (Tenn. 2001). Instead, the court must resolve these factual issues, at least preliminarily. *Edick v. Poznanski*, 6 F.Supp.2d 666, 668 (W.D. Mich. 1998); *Malkin v. United States*, 3 F.Supp.2d 493, 497 (D. N.J. 1998). The court must "determine whether the evidence in favor of finding jurisdiction is sufficient to allow the case to proceed." *Chenault v. Walker*, 36 S.W.3d at 56.

In assessing factual challenges to subject matter jurisdiction at the motion to dismiss stage, a court must keep in mind that the plaintiff bears the ultimate burden of proving facts establishing the court's jurisdiction over the case. *Chenault v. Walker*, 36 S.W.3d at 56; *Wilson v. Sentence Info. Servs.*, No. M1998-00939-COA-R3-CV, 2001 WL 422966, at *5 (Tenn. Ct. App. Apr. 26, 2001) (No Tenn. R. App. P. 11 application filed).

*Staats v. McKinnon*, 206 S.W.3d 532, 542-43 (Tenn. Ct. App. 2006) (footnotes omitted). In making its determination, the court should not credit "conclusory allegations or draw[] farfetched inferences." *Id.*

Mr. Brooks' complaint filed on December 10 did not even allege that the child was present in the State of Tennessee. Instead, it asserted,

[Mr. Brooks] alleges that this Court has jurisdiction to issue an emergency order concerning the minor child under Tennessee Code Annotated § 36-6-219 because Mother has subjected the minor child to abandonment and mistreatment, and the minor child is presently threatened with mistreatment by exposing the child to COVID-19 and to Mother's unstable behaviors if this Court does not exercise emergency jurisdiction and take immediate action to protect the minor child.

It explicitly stated, "Mother has possibly removed the child from Shelby County Tennessee, although the Mother has advised [Mr. Brooks] that the minor child is in Memphis as recently as December 8, 2020." Mr. Brooks alleged that he had most recently seen the child on November 26. He sought an injunction enjoining Mother from removing the child from Shelby County or requiring her to return to Shelby County if she had already left. Mr. Brooks attached an affidavit of his attorney, who stated, "The current location of

- 18 -

[Mother] in this cause is unknown, although [Mr. Brooks] believes her to currently be in Shelby County, Tennessee. No attempt at notice has been made to [Mother], as [Mr. Brooks] fears that [she] will leave the jurisdiction of this Court with the minor child should she know in advance about the filing of the herein action." (numbering omitted). At the hearing the following week, counsel submitted another affidavit stating that Mr. Brooks' attempts to serve Mother at the Memphis condo on December 10 and 11 were unsuccessful. She stated that service was also attempted at Mother's parents' home in Nevada on December 12 and "left at the door" there on November 14. Mr. Brooks' counsel informed the chancellor that Mother "on December 12th posted on a Facebook Marketplace post that she was trying to sell a couch and her profile said that she was located in Memphis, Tennessee." However, she also submitted a social media post depicting Mother on a private plane with the caption, "Catch Me If You Can." Based on this limited information, the chancery court entered its order issuing injunctive relief placing the child in the custody of Mr. Brooks. Notably, the court made no finding that the child was present in the state at that time or at the time of filing of the complaint. The court simply ordered that the child must remain in Shelby County or be returned to Shelby County if she was no longer present.

Mother filed a motion to dismiss on the basis that the trial court lacked subject matter jurisdiction to enter a temporary emergency custody order because the child was not present in the state. In support of Mother's motion to dismiss, Mother filed her own affidavit listing the dates that she and the child had been in Tennessee and stating that they were last in Tennessee on November 26, 2020. She also submitted the affidavit of the child's nanny, who stated that she knew the extent to which Mother and the child had traveled to Tennessee, and neither Mother nor the child had been present in Tennessee since late November. Thus, we construe Mother's challenge to subject matter jurisdiction under the UCCJEA as a factual challenge. A factual challenge "attacks the sufficiency of the evidence to prove the alleged jurisdictional facts." *Church of God in Christ, Inc. v. L. M. Haley Ministries, Inc.*, 531 S.W.3d 146, 160 (Tenn. 2017). "[C]ourts presented with such motions must weigh the evidence, resolve any factual disputes, and determine whether subject matter jurisdiction exists." *Id.*

In Mr. Brooks' response to Mother's motion to dismiss, he stated,

9. [Mr. Brooks] alleges that he believed Mother and the minor child may have still been in the State of Tennessee when he filed his initial complaint, and that Mother indicated to him as recently as December 8, 2020 that she and the child were still in Tennessee[.]
10. [Mr. Brooks] asserts that he had no way of knowing with certainty that the minor child was still present in Tennessee at the time of filing because Mother was and continues to actively conceal the child's location.

Interestingly enough, in the section of his response addressing service of process, Mr.

- 19 -

Brooks suggested that service in Nevada was appropriate because "[Mr. Brooks] had reason to believe Mother was staying in Nevada with her family, and Mother's bank statements indicate that she spent at least seventy-three (73) days in Nevada from June 9, 2020 through December 9, 2020." Mr. Brooks also admitted in his attached affidavit, "I have not seen nor known the location of my child since Thanksgiving 2020[.]" In the trial court's order denying Mother's motion to dismiss, the court stated that it had assumed emergency jurisdiction pursuant to Tennessee Code Annotated section 36-6-219. The order states, "At the time of filing this case in Shelby County, Mr. Brooks did not know the location of Mother or the Minor Child." However, the court went on to find that "Mother and the Minor Child were present in the state of Tennessee at the time of the filing of the complaint[.]"

In its subsequent order on the Rule 60.01 motion, the chancery court provided the rationale for its conclusion about the child's presence in Tennessee. First, the chancellor stated that he questioned Mother's credibility and discounted her affidavits because of some different zip codes listed in her supporting documentation about her residence. As affirmative evidence of the child's presence in Tennessee, the chancellor said there were "material facts upon which the Court relied to assume its emergency jurisdiction." First, the chancellor pointed to the allegation in the complaint that Mother had advised Mr. Brooks that the child was in Memphis as recently as December 8. Next, he noted the posting of the couch for sale on December 12 or 14. And finally, he noted Mr. Brooks' counsel's affidavit stating that Mr. Brooks did not know the location of Mother but believed her to be in Shelby County.

Even if we were to discount Mother's proof entirely, Mr. Brooks did not establish that the child was present in the State of Tennessee when the complaint was filed on December 10 (or has been since). Again, "in assessing factual challenges to subject matter jurisdiction at the motion to dismiss stage, a court must keep in mind that the plaintiff bears the ultimate burden of proving facts establishing the court's jurisdiction over the case." *Staats*, 206 S.W.3d at 543 (citing *Chenault*, 36 S.W.3d at 56; *Wilson*, 2001 WL 422966, at *5). Here, that burden was on Mr. Brooks. Mr. Brooks did not establish the child's presence in this State at the time of filing through the allegation in his complaint of what Mother had advised him as of December 8, nor did his counsel establish the child's presence by stating that Mr. Brooks did not know Mother's location but subjectively believed her to be in Shelby County. Mr. Brooks did not explain the basis for this conclusory belief and later conceded he "had no way of knowing with certainty that the minor child was still present in Tennessee at the time of filing" because Mother was already actively concealing the child's location. Finally, Mr. Brooks did not establish the child's presence in the state with the online listing of the couch for sale in Memphis. The online listing simply stated, "Crate and barrel extra large couch $700 Listed 2 days ago in Memphis TN." Under "Seller Information," it listed Mother's name with "Joined Facebook in 2020" and "Memphis, TN." It is not clear whether the listing was intended to show the location of the couch or Mother, but under the circumstances, it certainly did not

prove the location of the child on the date the petition was filed. In our opinion, this would be the type of "farfetched" inference described in *Staats*.[6]

This Court examined the requirements of Tennessee Code Annotated section 36-6-219 in *P.E.K. v. J.M.*, 52 S.W.3d 653 (Tenn. Ct. App. 2001). In that case, a father had filed a petition for temporary emergency custody alleging that his child had been taken to California and that the mother had threatened that he would never see the child again, causing him to fear for the child's safety. *Id.* at 655. The same day his petition was filed, the trial court awarded him temporary emergency custody under Tennessee Code Annotated section 36-6-219. *Id.* In an extraordinary appeal to this Court, the mother argued that because the child had already been removed from this state, the trial court was without jurisdiction to enter a temporary emergency custody order. *Id.* at 657. We agreed, rejecting the father's argument that a court may enter a temporary emergency custody order under the UCCJEA simply because it is "necessary to protect the child from abuse." *Id.* "The predicate on which the statute operates is the child's presence in this state and circumstances that demand the court's protection." *Id.* We explained,

> [T]here is no indication that the legislature intended to involve the courts of this state in emergencies existing in other states. We think the statute can only be read to say the courts of this state may issue a temporary emergency order if the child is abandoned in this state or the child or a sibling or parent is subjected to or threatened with abuse *in this state*. Otherwise the court would be powerless to correct the situation posing a threat to the child.

*Id.* at 658. In *P.E.K.*, "the temporary emergency custody order was invalid because the child was not present in this state and the facts alleged were insufficient to obtain such an order." *Id.* at 654. We reversed the temporary emergency custody order and remanded for further proceedings on the issues of paternity and whether the court had jurisdiction to make a custody determination under section 36-6-216. *Id.* at 660-61.

Because the child in this case was not shown to be present in Tennessee, the chancery court did not have the authority to invoke temporary emergency jurisdiction over her. *See Hernandez v. Hernandez*, No. W2018-01388-COA-R3-CV, 2019 WL 3430534, at *8 (Tenn. Ct. App. July 30, 2019) ("[T]he trial court did not have the authority to invoke temporary emergency jurisdiction concerning the Child because the Child was not present

---

[6] We recognize that in the chancery court's order on the Rule 60.01 motion, the court also stated that the court had "advised" Mother that the affidavits she submitted were insufficient for her to prevail and "requested that she present proof in the case to support her jurisdictional position." The order states that Mother did not appear to testify and therefore "should not complain about the record," and "[a]ny evidentiary deficiencies are now waived." However, it was ultimately Mr. Brooks' burden to prove facts establishing that the court had subject matter jurisdiction. *See Staats*, 206 S.W.3d at 543. Furthermore, "[a] challenge to subject matter jurisdiction cannot be waived[.]" *Church of God in Christ, Inc.*, 531 S.W.3d at 157.

in Tennessee[.]"). We now examine the effect of this ruling on the trial court's existing orders and the issues that remain to be decided in this case.

In *Button v. Waite*, 208 S.W.3d at 367, yet another extraordinary appeal, the Tennessee Supreme Court reviewed a trial court's order exercising temporary emergency jurisdiction under Tennessee Code Annotated section 36-6-219. Although the child's presence in the state was not at issue, the Supreme Court concluded that the Court of Appeals properly vacated the emergency order where the circumstances of the case did not involve the type of "compelling emergency" that justified the exercise of temporary emergency jurisdiction. *Id.* at 370. However, the Supreme Court determined that the Court of Appeals had erred by remanding with instructions for the trial court to dismiss the case for lack of jurisdiction. *Id.* The Supreme Court found it evident that the relief sought by the petitioner was modification of a Hawaii court's order, and the Supreme Court concluded that the Tennessee court possessed jurisdiction to modify the order. *Id.* at 372. As such, even though the temporary emergency order was vacated, the case was remanded for further proceedings. *Id.* at 373.

Although we find it appropriate to vacate the trial court's orders entered as an exercise of temporary emergency jurisdiction, our further resolution of this appeal is complicated by the fact that Mr. Brooks filed an amended complaint after the trial court's oral ruling and after the initial Rule 10 application to this Court. To briefly review the relevant sequence of events, the chancellor orally ruled that he was denying Mother's motion to dismiss, and Mother filed a Rule 10 application and requested a stay of the trial court proceedings. Mr. Brooks then filed an amended complaint on the same day this Court entered its stay of the trial court proceedings and directed Mother to obtain written orders memorializing the chancellor's oral rulings. Mr. Brooks' amended complaint added requests for the chancery court to enter "a legal finding that he is the father of the parties' minor child" and to exercise jurisdiction to make an initial custody determination under Tennessee Code Annotated section 36-6-216 of the UCCJEA. The trial court's subsequent written order denying Mother's motion to dismiss included a footnote stating: "[Mr. Brooks] has filed an amended complaint requesting a paternity determination. This matter is not yet before the Court." The chancery court repeatedly emphasized that it had, thus far, only "assumed its authority" to enter a temporary custody order on an emergency basis pursuant to Tennessee Code Annotated section 36-6-219. Thus, it found that Mother's argument about jurisdiction of parentage actions being exclusively in the juvenile court of Shelby County "applied to a parentage action pursuant to Tennessee Code Annotated § 36-2-307" but was not "germane" to the subject matter jurisdiction being exercised by the court under the "emergency powers" of section 36-6-219. According to the chancery court, "this case ***was not brought*** under Chapter 2 of Title 36," Mr. Brooks' "Complaint **was brought under Tennessee Code Annotated § 36-6-219**." The order states, "This Court acquired jurisdiction under Tennessee Code Annotated § 36-6-219 by the emergency nature of the issues brought before the Court[.]" The chancery court made clear that it had "made no determination of parentage" and had not yet decided any issues regarding

- 22 -

whether Tennessee was the child's home state and whether it could exercise jurisdiction under Tennessee Code Annotated section 36-6-216 to make an initial custody determination.

We must bear in mind that "'[f]or extraordinary appeals, the issues are limited to those specified in this court's order granting the extraordinary appeal.'" *Culbertson v. Culbertson*, 455 S.W.3d 107, 127 (Tenn. Ct. App. 2014) (quoting *Heatherly v. Merrimack Mut. Fire Ins. Co.*, 43 S.W.3d 911, 914 (Tenn. Ct. App. 2000)).

> Under the Rules of Appellate Procedure, the appellate court's grant of permission for an interlocutory appeal under Rule 10 does not transfer jurisdiction over the entire case to the appellate court, as would normally occur with an appeal as of right from a final judgment. Instead, with an interlocutory appeal, the appellate court's jurisdiction is limited to the issues specified in the appellate court's order granting permission for the appeal, and the balance of the case remains in the province of the trial court[.]

*Id.* at 126. Although eleven issues were raised in Mother's Rule 10 application, the limited issue on which this Court granted the application was "Whether [Mr. Brooks] had standing to file the December 10, 2020 '[Mr. Brooks]'s Complaint for Emergency Custody, For Injunctive Relief, and to Set Child Support' in Shelby County Chancery Court." As tempting as it might be to reach additional related issues, we conclude that the proper course of action in this appeal is to vacate the trial court's initial orders granting Mr. Brooks relief on the basis of temporary emergency jurisdiction but remand for the trial court to consider the remaining issues as they might relate to Mr. Brooks' amended complaint in a manner consistent with this Court's ruling that the exercise of temporary emergency jurisdiction was improper.

"[I]n cases wherein the initial complaint has been properly amended by the plaintiff(s), this Court has looked to the factual allegations of the amended complaint when making a determination regarding standing." *Bowers v. Est. of Mounger*, 542 S.W.3d 470, 481 (Tenn. Ct. App. 2017). "Even if a question of subject matter jurisdiction [is] implicated, [] when the original complaint is subsequently amended, . . . such amended complaint becomes the operative pleading, which the court must review for jurisdictional purposes." *Id.* at 480-81. Here, Mr. Brooks' amended complaint incorporated by reference the allegations of his original complaint and did not add any additional allegations regarding the child being present in the state at the time of filing or since, nor did the new allegations show that Mr. Brooks had established his paternity or executed a voluntary acknowledgment of paternity. As such, consideration of the amended complaint would not alter our analysis of the issues discussed above, regarding Mr. Brooks' standing or the exercise of temporary emergency jurisdiction. However, the amended complaint seeking a determination of paternity and an initial custody determination has been filed and must be considered by the trial court on remand. We express no opinion as to whether the

- 23 -

amended complaint was properly filed. However, the trial court erred in denying Mother's motion to dismiss without determining whether the amended complaint was the operative pleading before the court. On remand, the trial court must consider whether Mr. Brooks' amended complaint was properly filed. If so, it must also consider Mother's remaining arguments regarding the jurisdiction of the chancery court over parentage actions in light of our holding that the court lacked jurisdiction under Tennessee Code Annotated section 36-6-219.

Given the limited issue in this Rule 10 appeal, we decline to consider Mother's request to reassign this case to a different chancellor at this juncture. However, Mother is free to file a motion to recuse pursuant to Tennessee Supreme Court Rule 10B. *See Bruce v. Jackson*, No. E2018-01997-COA-R3-CV, 2019 WL 2157938, at *7 (Tenn. Ct. App. May 17, 2019) (declining to consider an argument on appeal that the case should not be remanded to the same trial judge where no Rule 10B motion had been filed and the issue was not designated as an issue presented for appeal); *Xcaliber Int'l Ltd., LLC v. Tenn. Dep't of Revenue*, No. M2017-01918-COA-R3-CV, 2018 WL 4293364, at *17-18 (Tenn. Ct. App. Sept. 10, 2018) (deeming a request for judicial reassignment on remand waived where no Rule 10B motion was filed and the issue was not designated for review on appeal); *In re Alysia S.*, 460 S.W.3d 536, 577-78 (Tenn. Ct. App. 2014) (noting that the mother asked this Court to require the appointment of a special judge on remand but declining to consider whether the judge should be recused given the mandatory language of Rule 10B regarding recusal motions); *Blair v. Rutherford Cty. Bd. of Educ.*, No. M2012-00968-COA-R3-CV, 2013 WL 3833516, at *7 (Tenn. Ct. App. July 19, 2013) ("Plaintiff has requested that the case be reassigned to a different judge on remand. In light of the adoption of Tenn. Sup. Ct. R. 10 regarding motions to recuse, Plaintiff should address her concerns to the trial court."). We also decline to consider Mr. Brooks' request, for the first time on appeal, for a discretionary transfer of this case from chancery court to juvenile court pursuant to Tennessee Code Annotated section 16-1-116. We likewise decline to express an opinion as to Mother's entitlement to attorney fees pursuant to Tennessee Code Annotated section 20-12-119. Mother can address this request to the trial court on remand.

Mother alternatively requested an award of attorney fees incurred in the trial court and on appeal pursuant to Tennessee Code Annotated section 36-6-236 of the UCCJEA. This statute provides:

§ 36-6-236. Award of necessary and reasonable expenses

The court may award the prevailing party, including a state, necessary and reasonable expenses incurred by or on behalf of the party, including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings. The court may assess fees, costs, or expenses against a state pursuant to this part.

Tenn. Code Ann. § 36-6-236. However, the UCCJEA also contains a second statute addressing attorney's fees, found at Tennessee Code Annotated section 36-6-223. It provides:

> § 36-6-223. Declining to exercise jurisdiction; unjustifiable conduct
>
> (a) Except as otherwise provided in § 36-6-219, or by other law of this state, if a court of this state has jurisdiction under this part because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless:
> (1) The parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;
> (2) A court of the state otherwise having jurisdiction under §§ 36-6-216--36-6-218 determines that this state is a more appropriate forum under § 36-6-222; or
> (3) No court of any other state would have jurisdiction under the criteria specified in §§ 36-6-216--36-6-218.
> . . . .
> (c) If a court dismisses a petition or stays a proceeding because it declines to exercise its jurisdiction pursuant to subsection (a), it shall assess against the party seeking to invoke its jurisdiction necessary and reasonable expenses including costs, communication expenses, attorney's fees, investigative fees, expenses for witnesses, travel expenses, and child care during the course of the proceedings, unless the party from whom fees are sought establishes that the assessment would be clearly inappropriate.

Tenn. Code Ann. § 36-6-223. The Official Comment to section 223 states, "The attorney's fee standard for this section is patterned after the International Child Abduction Remedies Act, 42 U.S.C. § 11607(b)(3). The assessed costs and fees are to be paid to the respondent who established that jurisdiction was based on unjustifiable conduct." The existence of this second statute within the UCCJEA has caused courts in other jurisdictions to examine exactly what "proceedings" are being referenced by the first statute.

Like the language used in the Uniform Act and in other jurisdictions, Tennessee Code Annotated section 36-6-236 authorizes an award of attorney fees incurred by the prevailing party "during the course of the proceedings." *See* Unif. Child Custody Jurisdiction & Enforcement Act § 312. Notably, however, Tennessee's version of the UCCJEA provides that the court "may" award the prevailing party such fees and costs, Tenn. Code Ann. § 36-6-236, while the Uniform Act provided that the court "shall" award the prevailing party such fees and costs. Unif. Child Custody Jurisdiction & Enforcement Act § 312.

In *Tyszcenko v. Donatelli*, 670 S.E.2d 49, 53 (Va. Ct. App. 2008), the Court of Appeals of Virginia considered a mother's argument that the prevailing party statute "applies to all proceedings under the UCCJEA," while the father argued that it applied "only to those proceedings under the UCCJEA that involve the enforcement of child custody determinations." The court acknowledged that the statute did not, "[o]n its face . . . expressly limit its application to any particular proceedings." *Id.* However, the court found it necessary to look at the UCCJEA as a whole. *Id.* The court recognized that the prevailing party statute was "not the only statute in the UCCJEA that permits a court to award attorney's fees and other costs to a prevailing party." *Id.* The court noted the second statute providing for an award of attorney fees in cases of unjustifiable conduct. *Id.* The court reasoned that if the prevailing party statute applied to all proceedings under the UCCJEA, as the mother asserted, a separate statute would not be needed to address attorney fees in the particular circumstances described in the second statute. *Id.* at 54. Thus, under the mother's broad reading of the prevailing party statute, the second statute would be superfluous. *Id.* To determine what "proceedings" were referenced in the prevailing party statute, the court considered the structure of the UCCJEA and its separate articles, explaining:

> The UCCJEA comprises four articles. Article 1 sets forth definitions and other general provisions. Article 2 defines the circumstances in which the trial court may exercise jurisdiction concerning child custody determinations. Article 3 establishes the procedures for the enforcement of child custody determinations. Article 4 consists of miscellaneous provisions.

*Id.* Because the prevailing party attorney fee statute fell within Article 3, which addressed recognizing and enforcing child custody determinations of other states, the court concluded that the statute applied solely to enforcement-related "proceedings." *Id.*

Other courts have reached the same conclusion. *See N.S. v. D.M.*, 21 Cal.App.5th 1040, 1050-51 (2018) ("On its face, this statute does not expressly limit its application to any particular proceeding. But it cannot apply to *all* proceedings under the UCCJEA, as that would render Chapter 2's separate expense provisions superfluous. . . . The structure of the statute indicates that section 3452 applies only to enforcement proceedings under chapter 3."); *Delgado v. Combs*, 314 Ga. App. 419, 431-32 (2012) ("In complying with the mandate that we consider the need to promote uniformity of the [UCCJEA] with respect to its subject matter among states that enact it, we, too, hold that OCGA § 19-9-92 applies only to the prevailing party in an enforcement proceeding."); *Creighton v. Lazell-Frankel*, 178 N.C. App. 227, 230 (2006) ("[Mother] did not seek the expedited enforcement of a child custody determination; seek to register an out-of-state order; or otherwise utilize the remedies set forth in Part 3 of the UCCJEA. Consequently, Part 3 was not implicated, and the allowance [of attorney fees to the prevailing party] set forth in G.S. § 50A-312 is inapplicable."); *In re Ruff*, 168 Wash.App. 109, 124 (2012) (finding the Virginia court's decision persuasive and narrowly reading the prevailing party statute).

- 26 -

Tennessee's statutory version of the UCCJEA is not clearly divided into separate articles, instead spanning consecutive sections from Tennessee Code Annotated section 36-6-201 to -243. However, the official comments to the statutes continue to refer to various "articles." *See, e.g.*, Tenn. Code Ann. § 36-6-227 Official Cmt. ("The remedies provided by this article for the enforcement of a custody determination will normally be used. This article does not detract from other remedies available under other local law."). In *Moorcroft v. Stuart*, No. M2013-02295-COA-R3-CV, 2015 WL 413094, at *8 (Tenn. Ct. App. Jan. 30, 2015), we examined a statutory reference in the UCCJEA to "enforcement under part 3 of this chapter," Tenn. Code Ann. § 36-6-205(4), and explained that Tennessee's version of the UCCJEA has no "Part 3." We noted that "[o]ur Legislature has directed us to seek guidance from the Model Act and its commentary." *Id.* "Article 3 of the Model Act covers proceedings for enforcement under the Hague Convention, UCCJEA § 302, registration of child-custody determinations from other states, *id*. § 305, enforcement of registered determinations, *id*. § 306, and various other subjects[.]" *Id.* Although Tennessee's version has no designated "part 3," we explained that its version "does have substantially similar provisions as Article 3 of the Model Act, but they are located at Tennessee Code Annotated §§ 36-6-226–241." *Id.* As such, even though the statute referenced "enforcement under part 3 of this chapter," it was "meant to reference Tennessee Code Annotated §§ 36-6-226–241." *Id.* at *9. The statute providing for attorney fees to the prevailing party, section 236, falls within this range.

We do recognize that Tennessee's version of the prevailing party statute provides that a court "may" award attorney fees to the prevailing party, Tenn. Code Ann. § 36-6-236, while the Uniform Act and other state counterparts discussed above provided that the court "shall" award fees to the prevailing party. Because of that difference, Tennessee's two statutes could be interpreted in a manner that would allow a discretionary award under section 236 to any prevailing party under the UCCJEA and a mandatory award under section 223 in the case of unjustifiable conduct. In that case, section 223 would not be rendered superfluous. However, the fact remains that the Uniform Act provided for a mandatory award under both sections, the Tennessee version was patterned after the Uniform Act, and courts construing the language used in the Uniform Act have held that the prevailing party statute was only meant to apply in the context of Article 3 enforcement-related "proceedings." We will similarly construe the Tennessee statute in order to promote uniformity under the UCCJEA. *See* Tenn. Code Ann. § 36-6-242 ("In applying and construing this uniform act, consideration must be given to the need to promote uniformity of the law with respect to its subject matter among states that enact it."); *see also Staats*, 206 S.W.3d at 547 (noting the UCCJEA was developed "with the goal of allowing the courts to develop a new and truly uniform body of decisional law to govern interstate child custody disputes").[7] As such, the statute cited by Mother is inapplicable to

---

[7] We also note that the Official Comment to Tennessee Code Annotated section 36-6-236 states, in part, "This section implements *the policies of* Section 8(c) of Pub. L. 96-611 (part of the PKPA)." (emphasis

this case, and her request for attorney fees is denied.

### III. CONCLUSION

For the aforementioned reasons, we vacate the chancery court's orders awarding custody and related relief to Mr. Brooks based on our conclusion that Mr. Brooks lacked standing to seek such immediate relief in the absence of any establishment of his paternity, and the trial court lacked temporary emergency jurisdiction. The vacated orders include the fiat and related restraining orders signed on December 10, the December 22 order issuing injunctive relief and transferring custody, and the February 1 order granting Mr. Brooks' motion to compel disclosure of the location of Mother and the child. We reverse the chancery court's order denying Mother's motion to dismiss in part, to the extent that the chancery court found that it had temporary emergency jurisdiction under Tennessee Code Annotated section 36-6-219. Thus, the portions of the order addressing Mother's arguments regarding subject matter jurisdiction and dismissal for failure to state a claim are also reversed due to the chancery court's rejection of Mother's arguments based on its claim of authority pursuant to section 36-6-219. The chancery court is directed to consider those issues on remand, in addition to the propriety of the amended complaint, in a manner consistent with this opinion. Costs of this appeal are taxed to the appellee, Dillon Brooks, for which execution may issue if necessary.

---

added). The Parental Kidnaping Prevention Act (PKPA), 28 U.S.C. § 1738A, "imposes a duty on the States to enforce a child custody determination entered by a court of a sister State if the determination is consistent with the provisions of the Act." *Thompson v. Thompson*, 484 U.S. 174, 175-76 (1988). "Congress' chief aim in enacting the PKPA was to extend the requirements of the Full Faith and Credit Clause to custody determinations[.]" *Id.* at 183. *See also* Tenn. Code Ann. § 36-6-227 Official Cmt. ("Enforcement of custody determinations of issuing States is also required by federal law in the PKPA, 28 U.S.C. § 1738A(a).").

The subsection cited by the Official Comment, Section 8(c) of Pub. L. 96-611, provided that:

In furtherance of the purposes of section 1738A of title 28, United States Code [this section], as added by subsection (a) of this section, State courts are encouraged to--
. . .
(2) award to the person entitled to custody or visitation pursuant to a custody determination which is consistent with the provisions of such section 1738A [this section], necessary travel expenses, attorneys' fees, costs of private investigations, witness fees or expenses, and other expenses incurred in connection with such custody determination in any case in which--
(A) a contestant has, without the consent of the person entitled to custody or visitation pursuant to a custody determination which is consistent with the provisions of such section 1738A [this section], (i) wrongfully removed the child from the physical custody of such person, or (ii) wrongfully retained the child after a visit or other temporary relinquishment of physical custody; or
(B) the court determines it is appropriate.

_____
CARMA DENNIS MCGEE, JUDGE